# EXHIBIT A

IN THE COURT OF COMMON PLEAS OF MONROE COUNTY

SANDRA SILER, individually and on behalf : Civil Action No.
of all others similarly situated, :
                                      :
                    Plaintiff,        : Class Action
                                      :
            vs.                       : 10382 CV 2019
                                      :
CSAA GENERAL INSURANCE                :
COMPANY, a Indiana Corporation.       :
                                      :
                    Defendant.        :

## CLASS ACTION COMPLAINT

Plaintiff Sandra Siler ("Plainitff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against CSAA General Insurance Company, ("CSAA" or "Defendant"), and in support states:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, the named insured under an automobile policy issued for private passenger auto physical damage (the "Insurance Policy"),[1] including comprehensive and collision coverage, which requires payment of "Actual Cash Value" or "ACV." The ACV of a vehicle equates to the full cost to replace the vehicle and such cost includes any mandatory state and local costs and fees (Full Total Loss Payments or "FTLP") required to replace the vehicle.

2.      Defendant is a private passenger auto insurance carrier operating in Pennsylvania. One of the coverages Defendant offers is comprehensive and collision coverage. Upon information

---

[1] Plaintiff's Insurance Policy is attached hereto as Exhibit A.

and belief, Defendant systematically underpaid not just Plaintiff but thousands of other putative

class members ("Class Members") amounts Defendant owed its insureds for ACV losses for total

loss vehicles insured with comprehensive and collision coverage.

3.      This lawsuit is brought by the Plaintiff, individually and on behalf of all other similarly

situated insureds, who suffered damages due to Defendant's practice of refusing to pay full ACV

payments to first-party total loss insureds on physical damage policies containing comprehensive and

collision coverages. Specifically, as a matter of policy, Defendant fails to the full title registration and

regulatory fees (FTLP) in its calculation of ACV when paying full total loss payment to its insureds.

4.      Plaintiff brings a claim for breach of contract based on Defendant's practice of

failing to include full title registration and regulatory fees notwithstanding its contractual obligation

to do so.

5.      Venue is proper in this Court because the individual plaintiff is a resident of Monroe

County, and a substantial portion of the acts and course of conduct give rise to the claims alleged

occurred within Monroe County.

## THE PARTIES

6.      At all times material hereto, Plaintiff was a citizen of the Commonwealth of

Pennsylvania and resides in Tannersville, PA.

7.      At all times material hereto, Defendant is and was a corporation located in the State

of Indiana and authorized to transact insurance in the Commonwealth of Pennsylvania and

conducting a substantial part of its business in Tannersville, Pennsylvania. Defendant's principal

place of business and headquarters are both located in the State of Indiana.

2

## FACTUAL ALLEGATIONS

8.      In the Insurance Policy, Defendant's standardized policy language promises, upon the occurrence of a total loss to an insured vehicle, to provide payment of the ACV of the insured vehicle to the insured.

9.      Defendant's standardized policy language as to coverage for ACV of total loss vehicles is present in every auto policy issued by Defendant in Pennsylvania during the relevant time period.

10.     Under the policy and applicable state law, ACV has consistently been interpreted to mean repair or replacement costs less depreciation. Under the policy, ACV includes an obligation to pay state and local fees for total loss vehicle comprehensive and collision coverage (previously defined herein as FTLP). Such fees include title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees, each of which are mandatory fees imposed by the Commonwealth of Pennsylvania.

11.     At all times material hereto, Plaintiff owned a 2009 SUZUKI SX4, VIN # JS2YB417996200195 (the "Insured Vehicle").

12.     At all times material hereto, the Insured Vehicle was insured under the Insurance Policy issued by Defendant.

13.     On or about November 2, 2017, Plaintiff was involved in an accident while operating the Insured Vehicle. As a result of the accident, Plaintiff filed a claim for property damage with Defendant, claim number 1002-37-7700 (the "Claim").

14.     Following the filing of the Claim, a third-party vendor CCC Information Services, Inc. ("CCC") determined that the Insured Vehicle had a total valuation of $5,654.57. *See* **Exhibit B** at 1 (Market Valuation Report).

3

15.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report. *See Id* at 1. Instead the Report noted that the Total Value of $5,654.57 may not reflect the settlement amount because items such as "license and fees" were not taken into account in determining value, and may need to be taken into account prior to final determination of the settlement amount. *See Id* at 1.

16.     Defendant then determined the total value amount to be $5,417.50, and subtracted the deductible of $500.00 for a final payment of $5,242.55 to Plaintiff. *See* **Exhibit C** (Settlement Breakdown).

17.     Defendant's payment of $5,242.55 did not include amounts for title transfer or tag transfer fees (previously defined herein as FTLP).

18.     Title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees (FTLP) are mandatory applicable fees that must be paid to replace any vehicle in the Commonwealth of Pennsylvania.

19.     Upon information and belief, Defendant, pursuant to a standard and uniform business practice, never pays insureds FTLP after a total-loss to an insured vehicle, notwithstanding its contractual obligation to do so.

20.     Vehicles are required to be legally titled, registered, and inspected in order to be used and operated in the State of Pennsylvania. Pennsylvania imposes fees on such transactions, including a title fee of $55.00, a title lien fee of $26.00 (if a lien is recorded with the transfer of title), a passenger vehicle registration transfer fee of $9.00, county fees up to $5.00, PA State Safety Certificate of Inspection Program Certificate Fee ("Safety Inspection Sticker") of $8.00, and a PA Emission Inspection Program Management Fee ("Emissions Inspection Sticker") of $1.57. As mandatory, unavoidable fees, such fees are incontrovertibly part of the costs to replace a total loss vehicle.

21.     Defendant breached its Insurance Policy with Plaintiff by failing to pay any amount for the title fee, title lien fee, registration fee, county fee, Safety Inspection Sticker fee, or Emissions Inspection Sticker fee when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle.

22.     Plaintiff paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

## THE POLICY

23.     Pursuant to the Insurance Policy, under the section entitled "Coverage for Damage to Your Auto" the Defendant "will pay for direct and accidental loss to 'your covered auto' or a 'non-owned auto,' including its permanently attached equipment, minus any applicable deductible shown in the Declarations." *See* **Exhibit A** at 21.

24.     The definition of "your covered auto" includes "any motor vehicle shown in the Declarations." *Id.* at 8.

25.     Under a provision entitled "Limit of Liability," Defendant states, in relevant part, that "Our limit of liability for loss will be the lowest of the:

1. Actual cash value of the stolen or damaged property;
2. Amount necessary to repair or replace the property with other property of like kind and quality."

*Id.* at 28.

26.     ACV is not defined in the Insurance Policy.

27.     The policy language applies to all covered autos irrespective of ownership interests - whether owned, financed or leased.

28.     The Insurance Policy does not exclude:  (1) title fees, title lien fees, registration fees, county fees, safety and emissions inspection fees from ACV; or (2) any provision deferring or conditioning payment of vehicle title and registration fees for any purpose whatsoever.

29.     According to Defendant's policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendant promises to pay a predictable amount – the actual cash value of the insured vehicle, including tag and transfer fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

30.     Nevertheless, Defendant declines to include all such fees and costs in making ACV payment to total-loss insureds – specifically tag and title transfer fee amounts – thereby breaching its contracts with insureds.

31.     Actual cash value is the repair or replacement cost minus depreciation – a definition which would include sales tax and title and transfer tag fees necessarily incurred upon replacement of the insured vehicle.

32.     Defendant's policy promises to provide costs to be incurred upon replacement of the vehicle.

## CLASS ALLEGATIONS

33.     Plaintiff brings this action as a class action  pursuant to Pa. R. Civ. P. 1702, 1708, and 1709.

34.     Plaintiff brings this action as class representative, individually and on behalf of all other persons or entities similarly situated, more specifically defined as follows:

6

All insureds, under any Pennsylvania policy issued by CSAA General Insurance Company covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss, who made a first-party claim for total loss, where such vehicle was declared a total loss and adjusted as a total loss, within the applicable time period prior to the date on which this lawsuit was filed until the date of class certification order.

35.     The prerequisites to class certification under Pa. R. Civ. P. 1702 are met in that the members of the class are so numerous that joined of all members is impractical.

36.     Plaintiff's claims are typical to those of all class members because members of the class are similarly affected by Defendant's failure to make the FTLP upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's policies.

37.     Plaintiff's interests are coincident with and not antagonistic to those of other class members, nor is Plaintiff subject to any unique defenses.

38.     Plaintiff's claims raise questions of law and fact common to all members of the class, within the meaning of Pa. R.Civ. P. 1702 and they predominate over any questions affecting only individual Class Members .

39.     Common questions include, but are not limited to, the following: (a) whether, under the Defendant's standardized policy language, Plaintiff and the class members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant has breached its insurance contracts with the Plaintiff and the class members by failing to make the FTLP upon the total loss of an insured vehicle.

40.     Plaintiff's claims are typical of the claims of all other members of the class because all such claims arise from the allegedly improper failure by Defendant to make a FTLP upon

7

the total loss of insured vehicles.

41.     Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class.

42.     Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel experienced in prosecuting and defending class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses.

43.     Pursuant to Pa. R.Civ. P. 1702(5) and 1708, a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

44.     The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members of the classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

45.     Although the precise number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that the class of persons affected by Defendant's unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The

unlawful practice alleged herein is a standardized and uniform practice, employed by Defendant pursuant to standardized insurance policy language, and results in the retention by Defendant of insurance benefits and monies properly owed to Plaintiff and the class members. Thus, numerosity as to both classes is established.

46.     Pa. R.Civ. P. 1702 (2)'s commonality requirement for the Class is satisfied for reasons articulated herein. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for class wide adjudication. Defendant and all class members are bound by the same materially identical policy terms. In addition to those reasons listed above, common questions include, but are not limited to the following: (a) whether under Defendant's standardized policy language, Plaintiff and Class Members are owed FTLP upon the total loss of an insured vehicle; and (b) whether Defendant breached its insurance contracts with Plaintiff and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

47.     Pa. R.Civ. P. 1702(3)'s typicality requirement for the Class Members is satisfied for reasons articulated herein, and particularly because Plaintiff and Class Members were injured through Defendant's uniform misconduct. Further, Plaintiff and Class Members' legal claims arise from the same core practices, namely, the failure to make FTLP, including tag/title transfer fees, for first-party total loss claims. Plaintiff's claims are based upon the same legal theories as those of the Class Members. Plaintiff suffered the same harm as all the other Class Members.

48.     The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members. Without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal

and factual issues.

49.      Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

50.      Pa. R.Civ. P. 1708's requirements are met for all reasons already stated herein.

51.      Specifically, the previously articulated common issues of fact and law predominate over any question solely affecting individual Class Members. Further, and as stated previously, class treatment is superior to any other alternative method of adjudication because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them, and Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

52.      Defendants' breach of Policy provisions requiring them to pay ACV on total loss claims is a continuing breach and violation of Policy terms. Injunctive relief is necessary to stop these repeated and continued violations, which are likely to continue, repeat, and cause damages to the Class in the future.

## COUNT I
## CLAIM FOR BREACH OF CONTRACT

53.      Paragraphs 1-52 are hereby incorporated by reference.

54.      This count is brought by Plaintiff individually and on behalf of the Class Members.

55.      Plaintiff was a party to a contract. the Insurance Policy, with Defendant as described herein. *See* **Exhibit A.** All Class Members were parties to an insurance contract with

Defendant containing materially identical terms.

56.      The interpretation of Plaintiff's and all Class Members' insurance policies is governed by Pennsylvania law.

57.      Plaintiff and all Class Members made a claim determined by Defendant to be a first-party total loss under the insurance policy and determined by Defendant to be a covered claim.

58.      Defendant, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all of their duties and conditions under their respective insurance policies for each to be paid on his or her total loss.

59.      Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, the Plaintiff and every Class Member were owed the ACV of the vehicle.

60.      Defendant refused to make a FTLP (including mandatory fees) and thus failed to pay ACV owed under the Insurance Policy to Plaintiff and every Class Member.

61.      Defendant's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

62.      As a result of said breaches, Plaintiff and the class members are entitled to sums representing the benefits owed for the full ACV payment, including full title registration and regulatory fees, as well as costs, prejudgment and post judgment interest, injunctive relief and other relief as is appropriate.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, individually and on behalf of the putative Class, demands relief and judgment as follows:

1.      For an Order certifying this action as a Class Action on behalf of the Class described above;

2.      For an award of compensatory damages for the Class in amounts owed by Defendant;

3.      For all other damages according to proof;

4.      For an award of attorney's fees and expenses as appropriate pursuant to applicable law;

5.      For costs of suit incurred herein;

6.      For pre- and post-judgment interests on any amounts awarded; and

7.      For other and further forms of relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

By: */s/ Jonathan Shub*
**KOHN, SWIFT & GRAF, P.C.**
Jonathan Shub (Bar No. 53965)
Kevin Laukaitis
1600 Market Street, Suite 2500
Philadelphia, PA  19103-7225
T:  215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

**NORMAND PLLC**
Edmund A. Normand  *(pro hac vice to be filed)*
Jacob L. Phillips *(pro hac vice to be filed)*
3165 McCrory Place, Suite 175
Orlando, FL 32803
T: 407-603-6031
Ed@NormandPLLC.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq. *(pro hac vice to be filed)*
20900 NE 30th Avenue, #417
Aventura, FL 33180
T: 305-975-3320
scott@edelsberglaw.com

utanski@edelsberglaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis *(pro hac vice to be filed)*
14 NE 1st Ave., Suite 1205
Miami, FL 33132
T: 305-479-2299
efilings@shamisgentile.com

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq. *(pro hac vice to be filed)*
300 S. Biscayne Blvd, #2704
Miami, FL 33131
T: 305-610-5223
rachel@dapeer.com

# EXHIBIT A

# CONTENTS

**AGREEMENT**.......................................................... 3

**DEFINITIONS**........................................................ 3

**PART I – LIABILITY COVERAGE**............................ 8
    INSURING AGREEMENT..................................... 8
    SUPPLEMENTARY PAYMENTS ......................... 9
    EXCLUSIONS ..................................................... 10
    LIMIT OF LIABILITY........................................... 12
    OUT OF STATE COVERAGE............................. 13
    FINANCIAL RESPONSIBILITY........................... 14
    OTHER INSURANCE ........................................ 14

**PART II – FIRST PARTY BENEFITS
COVERAGE**............................................................ 14
    INSURING AGREEMENT................................... 14
    EXCLUSIONS ..................................................... 17
    LIMIT OF LIABILITY........................................... 19
    PRIORITIES OF POLICIES ................................ 19
    NON-DUPLICATION OF BENEFITS.................. 21

**PART III – (RESERVED FOR FUTURE USE).......  21**

**PART IV – COVERAGE FOR DAMAGE TO
YOUR AUTO**.......................................................... 21
    INSURING AGREEMENT................................... 21
    TRANSPORTATION EXPENSES ...................... 24
    EXCLUSIONS ..................................................... 25
    LIMIT OF LIABILITY........................................... 27
    PAYMENT OF LOSS ......................................... 28
    NO BENEFIT TO BAILEE.................................. 29
    OTHER SOURCES OF RECOVERY ................. 29
    APPRAISAL ....................................................... 29

PART V – DUTIES AFTER AN ACCIDENT
OR LOSS ............................................................ 30

**PART VI – GENERAL PROVISIONS ..................... 31**

BANKRUPTCY ..................................................... 31

CHANGES............................................................ 31

SMALL PREMIUM ADJUSTMENTS................... 32

CONCEALMENT OR FRAUD............................. 32

LEGAL ACTION AGAINST US ........................... 32

OUR RIGHT TO RECOVER PAYMENT............. 32

POLICY PERIOD AND TERRITORY.................. 33

TERMINATION .................................................... 33

UNCLAIMED PROPERTY ................................... 35

TRANSFER OF YOUR INTEREST IN THIS
POLICY ................................................................ 35

TWO OR MORE AUTOMOBILE POLICIES ....... 36

CONSTITUTIONALITY CLAUSE........................ 36

TERMS OF POLICY CONFORMED TO
STATUTES........................................................... 36

**OPTIONAL COVERAGE ENDORSEMENTS........ 38**

EXTRAORDINARY MEDICAL BENEFITS
COVERAGE......................................................... 38

FULL COMPREHENSIVE SAFETY GLASS
COVERAGE ENDORSEMENT............................ 41

NEW CAR ADDED PROTECTION
COVERAGE ENDORSEMENT............................ 41

RENTAL CAR REIMBURSEMENT
COVERAGE ENDORSEMENT............................ 43

SPECIAL EQUIPMENT COVERAGE
ENDORSEMENT ................................................. 44

TOWING AND LABOR COSTS
COVERAGE ENDORSEMENT............................ 45

VEHICLE LOAN/LEASE PROTECTION
COVERAGE ENDORSEMENT............................ 45

**AGREEMENT**

These policy provisions, along with your Application, the Declarations and Endorsements issued to you, constitute your entire policy with us.

In consideration of the representations in your Application and any renewal of this policy, and if you pay your premium as due, we will provide you with the:

1.  Types of coverage; and

2.  Limit of liability;

for which you have paid a premium, as shown in the Declarations.

This insurance is subject to all the terms and provisions of this policy, and applies only to accidents that occur:

1.  During the Policy Period; and

2.  In the Policy Territory;

as set forth in Part **VI** of this policy.

---

## DEFINITIONS

---

A.  Throughout this policy, "you" and "your" refer to:

   1.  The "Named Insured" shown in the Declarations; and

   2.  The spouse, "domestic partner" or partner in a "civil union", if a "resident" of the same household.

   If the spouse, "domestic partner" or partner in a "civil union" ceases to be a "resident" of the same household during the policy period or prior to the inception of this policy, the spouse, "domestic partner" or partner in a "civil union" will be considered "you" and "your" under this policy but only until the earlier of:

   1.  The end of 90 days following that person's change of residency;

3

**2.** The effective date of another policy listing the spouse, "domestic partner" or partner in a "civil union" as a named insured; or

**3.** The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a motor vehicle shall be deemed to be owned by a person if leased:

**1.** Under a written agreement to that person; and

**2.** For a continuous period of at least six months.

Other words and phrases are defined. They are in quotation marks when used. Otherwise, the plain meaning of the word applies.

**D.** "Auto" means a self-propelled land motor vehicle, designed for use mainly on public roads, that is:

**1.** A four-wheel private passenger automobile; or

**2.** A four-wheel or six-wheel pickup truck or van;

with a Gross Vehicle Weight Rating of 9,000 lbs. or less.

**E.** "Auto business" means the "business" of:

**1.** Selling;

**2.** Parking, storing or delivering;

**3.** Servicing, testing or road testing; or

**4.** Repairing, modifying or customizing;

motor vehicles.

**F.** "Bodily injury" means physical harm, sickness or disease suffered by a person, including death that results.

**G.** "Business" means a:

**1.** Trade;

**2.** Profession; or

**3.** Occupation;

whether engaged in full- or part-time.

**H.** "Civil union" means a legal recognition of a committed, marriage-like partnership, providing

4

rights and legal protection as established by the state, provided the union is:

1. Valid under the laws of the state where it was formed; and

2. Not prohibited by law in the state where this policy is issued.

I. "Domestic partner" and "domestic partnership" refer to persons who have chosen to share one another's lives in a committed relationship of mutual caring and financial support, provided the relationship:

1. Is registered and is a valid domestic partnership under the laws of the jurisdiction where it was formed; and

2. Is not prohibited by law in the state where this policy is issued.

J. "Family member" means a person who is a "resident" of your household and who is:

1. Related to you by blood, marriage, "domestic partnership", "civil union" or adoption; or

2. Under the age of 25 and who is:

   a. Under your guardianship or who was under your guardianship at the time of reaching the age of majority. This includes a ward or foster child.

   b. Under the guardianship of a "resident" identified in **J.1.** above or who was under the guardianship of a "resident" identified in **J.1.** above at the time of reaching the age of majority. This includes a ward or foster child.

K. "Newly acquired auto" means any "auto" you become the owner of during the policy period:

1. For which no other insurance policy provides coverage; and

2. Which is not principally used in any "business" other than farming or ranching.

"Newly acquired auto" also includes a motor home which replaces a motor home listed in the Declarations.

We will provide coverage for a "newly acquired auto" as follows:

5

1. A "newly acquired auto" will have the broadest coverage under this policy that we now provide for any "auto" shown in the Declarations. Coverage begins on the date you become the owner, provided you ask us to insure the "newly acquired auto" within 30 days after you become the owner. Additionally,

   a. For coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, we must insure all other "autos" owned by you.

   b. If you do not have Collision or Comprehensive Coverage for any "your covered auto" and would like us to add these coverages to your "newly acquired auto", you must ask us to do so within 30 days after you become the owner. Prior to the time you ask us for this coverage, any covered loss to the "newly acquired auto" is subject to a deductible of $500. Beyond the time you ask us for coverage, any covered loss is subject to the coverages and deductibles you selected for the "newly acquired auto".

2. If you ask us to insure a "newly acquired auto" more than 30 days after you become the owner, coverage for that vehicle will begin at the time of your request.

**L.** "Noneconomic loss" means pain and suffering and other nonmonetary detriment.

**M.** "Non-owned auto" means any "auto" or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while:

1. In the custody of; or

2. Being operated by;

you or any "family member", provided such operation is with the express or implied permission of the owner and within the scope of that permission.

**N.** "Occupying" means:

1. In;

6

2. Upon; or

3. Getting in, on, out or off.

**O.** "Personal vehicle share program" means an organized program that coordinates the sharing of private passenger vehicles for non-commercial use by individuals.

**P.** "Property damage" means physical damage to or destruction of tangible property, including loss of use of that property.

**Q.** "Punitive damages" means money awarded to punish a person or set an example.

**R.** "Race or speed contest" means the use of any vehicle to:

1. Compete in; or

2. Practice or prepare for;

any pre-arranged or organized race, speed, stunt or similar contest.

**S.** "Resident" means a person who lives with and inhabits the same dwelling as you. An unmarried "family member" while away from home to:

1. Attend school:

    a. Full-time, as defined by the school; and

    b. Who is under the age of 25; or

2. Serve in the armed forces;

is considered a "resident" if he or she intends to continue to live with you.

**T.** "Serious injury" means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

**U.** "Trailer" means a vehicle designed to be pulled by an "auto".

**V.** "Volunteer services" means providing transportation on behalf of a:

1. Non-profit charity; or

2. Government agency;

without pay of any kind other than actual expenses.

**W.** "Your covered auto" means:

1. Any motor vehicle shown in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any "auto" or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. Breakdown.

   b. Repair.

   c. Servicing.

   d. Loss.

   e. Destruction.

---

## PART I – LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay, up to the limit of liability that applies:

   1. Damages that an "insured" is legally responsible to pay for "bodily injury" or "property damage" because of a motor vehicle accident; and

   2. Court costs awarded against an "insured", in any action we defend, on that part of any damages we owe.

B. We will settle or defend, as we deem appropriate, any claim or lawsuit seeking damages payable under this Part. We have the sole right to select the attorney to defend any claim or lawsuit.

C. Limitations:

   1. We have no duty to defend or settle any claim or lawsuit not covered by this Part.

   2. Our duty to settle or defend ends when the amount we owe for this coverage is exhausted by payment of judgments or settlements.

   3. We have no duty to defend any criminal or administrative action.

8

We have no duty to reimburse anyone for any payment made or liability assumed, without our prior written consent, in the:

    **a.** Investigation;

    **b.** Defense; or

    **c.** Settlement;

of any claim or lawsuit.

**D.** As used in this Part only, "insured" means:

    **1.** You or a "family member" for the:

        **a.** Ownership, maintenance or use of "your covered auto".

        **b.** Use of a "non-owned auto" or non-owned "trailer":

            **(1)** While operated by, or in the custody or control of, you or a "family member"; and

            **(2)** With the express or implied permission of its owner, and within the scope of that permission.

    **2.** Any person while using "your covered auto" with your express or implied permission and within the scope of that permission.

    **3.** Any Additional Insured listed in the Declarations, with respect to liability arising out of the use of "your covered auto" by any person described in **D.1.** or **D.2.** above.

**SUPPLEMENTARY PAYMENTS**

We will pay the following for a claim or lawsuit to which this Part applies. These payments will not reduce the limit of liability.

**1.** Costs of defense that we incur.

**2.** Expenses incurred by the "insured" at our request to attend a proceeding or trial. These include:

    **a.** Actual lost earnings up to $200 per day; and

    **b.** Actual travel and other reasonable expenses approved by us.

**3.** Post-judgment interest accruing on that part of any judgment we owe. Our duty to pay interest ends when we offer to pay, or deposit in court,

that part of the judgment which does not exceed our limit of liability under this Part.

4. Costs we incur if we decide to appeal a judgment for covered damages. However, we will only pay the cost of an appeal bond for the damages we owe.

5. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered by this Part.

6. Prejudgment interest awarded against the "insured" on the part of the judgment we pay. Any prejudgment interest awarded against the "insured" is subject to the applicable Pennsylvania Rules of Civil Procedure.

## EXCLUSIONS

A. We do not provide Liability Coverage for any "insured":

1. For "bodily injury" or "property damage" caused intentionally by, or at the direction of that "insured".

2. For "property damage" to property:

   a. Owned by;

   b. Rented to;

   c. Used by;

   d. Transported by; or

   e. In the care of;

   that "insured". This Exclusion (A.2.) does not apply to "property damage" to a residence or private garage.

3. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.3.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

4. While employed or otherwise engaged in the "auto business". This Exclusion (A.4.) does

10

not apply to the ownership, maintenance, or use of "your covered auto" by:

   **a.** You or a "family member"; or

   **b.** A partner, agent, or employee of you or a "family member".

**5.** Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.4.** This Exclusion **(A.5.)** does not apply to the maintenance or use of an "auto", or the use of a "trailer" while attached to an "auto".

**6.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(A.6.)** does not apply to a "family member" using "your covered auto" which is owned by you.

**7.** For "bodily injury" or "property damage" covered by nuclear energy liability insurance, even if the limits of that insurance are exhausted.

**8.** For liability assumed by the "insured" under any contract or agreement. This Exclusion **(A.8.)** does not apply to liability that the "insured" would have in the absence of a contract or agreement.

**9.** For "punitive damages", or any fine or penalty.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of any motor vehicle:

**1.** Which:

   **a.** Has fewer than four wheels; or

   **b.** Is designed mainly for use off public roads.

This Exclusion **(B.1.)** does not apply while such motor vehicle is being used by an "insured" in a medical emergency.

**2.** Other than "your covered auto" which is:

   **a.** Owned by you; or

   **b.** Furnished or available for your regular use.

11

**3.** Other than "your covered auto" which is:

    **a.** Owned by any "family member"; or

    **b.** Furnished or available for the regular use of any "family member".

However, this Exclusion **(B.3.)** does not apply to you while you are maintaining or "occupying" any motor vehicle which is:

    **a.** Owned by a "family member"; or

    **b.** Furnished or available for the regular use of a "family member".

**4.** While used to carry persons or property for a charge. This Exclusion **(B.4.)** does not apply to an "auto" while used:

    **a.** In a shared-expense car pool; or

    **b.** To provide "volunteer services".

**5.** While leased or rented to others, including the use of "your covered auto" while used in a "personal vehicle share program".

**6.** While used in a "race or speed contest".

## LIMIT OF LIABILITY

**A.** The Bodily Injury limit of liability shown in the Declarations for each person is the most we will pay for all damages arising out of "bodily injury" sustained by any one person in any one accident. This includes all damages for claims derived or resulting from such "bodily injury", including claims for:

**1.** Loss of care, loss of services or loss of consortium.

**2.** Emotional injury or mental anguish resulting from the "bodily injury" of another or from witnessing the "bodily injury" to another.

**3.** Consequential damages sustained by others.

**4.** The death of any person.

**B.** Subject to the limit of liability for each person, the Bodily Injury limit of liability shown in the Declarations for each accident is the most we will pay for all damages arising out of "bodily injury" sustained by two or more persons in any one accident.

12

the Property Damage limit of liability shown in the Declarations for each accident is the most we will pay for all "property damage" resulting from any one accident.

D. These limits are the most we will pay regardless of the number of:

  1. "Insureds".

  2. Claims made.

  3. Vehicles or premiums shown in the Declarations.

  4. Vehicles involved in the accident.

E. An "auto" and attached "trailer" are considered one vehicle. Therefore, the limit of liability will not be increased for an accident involving an "auto" while a "trailer" is attached.

F. No one will be entitled to receive duplicate payments for the same elements of loss under this Part and:

  1. Part II of this policy.

  2. Any Uninsured or Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If a motor vehicle accident to which this policy applies occurs in any state or province other than the one for which this policy is issued, we will interpret your policy for that accident as follows:

A. If the state or province has:

  1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

  2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

13

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

---

## PART II – FIRST PARTY BENEFITS COVERAGE

**INSURING AGREEMENT**

A. Basic First Party Benefits Coverage

    1. We will pay, in accordance with the Act, the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

    2. Subject to the limit shown in the Declarations, the Basic First Party Benefit consists of:

        a. Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

            (1) Care;

            (2) Recovery; or

            (3) Rehabilitation.

        This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

        Medical expenses will be paid if incurred within 18 months from the date of the accident causing "bodily injury".

14

However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

**B. Added First Party Benefits Coverage**

1. If the Declarations indicates that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

2. Subject to the limits shown in the Declarations, Added First Party Benefits consist of the following:

   **a.** Medical expenses as described in the Basic First Party Benefit.

   **b.** Work loss.

      **(1)** Loss of income. Up to 80% of gross income actually lost by an "insured" as a result of the accident.

      **(2)** Reasonable expenses actually incurred to reduce loss of income by hiring:

         **(a)** Special help, thereby enabling an "insured" to work; or

         **(b)** A substitute to perform the work a self-employed "insured" would have performed.

   However, work loss does not include:

      **(1)** Loss of expected income or expenses incurred for services performed after the death of an "insured"; or

      **(2)** Any loss of income, or expenses incurred for services performed, during the first five working days the

15

"insured" did not work due to "bodily injury".

   **c.** Funeral expenses. Funeral or burial expenses actually incurred if "bodily injury" causes an "insured's" death within 24 months from the date of the accident.

   **d.** Accidental death. A death benefit paid if "bodily injury" causes the death of you or any "family member" within 24 months from the date of the accident.

   We will pay accidental death to the executor or administrator of the deceased "insured's" estate. If there is no executor or administrator, the benefit shall be paid to:

    **(1)** The deceased "insured's" surviving spouse, "domestic partner" or partner in a "civil union"; or

    **(2)** If there is no surviving spouse, "domestic partner" or partner in a "civil union", the deceased "insured's" surviving children; or

    **(3)** If there is no surviving spouse, "domestic partner", partner in a "civil union" or children, to the deceased "insured's" estate.

**C.** Combination First Party Benefits Coverage

   **1.** If the Declarations indicates that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle". These benefits are subject to the provisions of the Act.

   **2.** Subject to the limits shown in the Declarations, Combination First Party Benefits consist of the following, as described in the Basic First Party Benefit and Added First Party Benefits:

   **a.** Medical expenses.

   **b.** Work loss.

**c.** Funeral expenses.

**d.** Accidental death.

**D.** "The Act" refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

**E.** As used in this Part only:

**1.** "Bodily injury" means accidental bodily harm to a person and that person's resulting illness, disease or death.

**2.** "Insured" means:

**a.** You or any "family member".

**b.** Any other person while:

**(1)** "Occupying" "your covered auto"; or

**(2)** Not "occupying" a "motor vehicle" if injured as a result of an accident in Pennsylvania involving "your covered auto".

If "your covered auto" is parked and unoccupied it is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

**3.** "Motor vehicle" means a self-propelled vehicle operated or designed for use upon public roads. However, "motor vehicle" does not include a vehicle operated:

**a.** By muscular power; or

**b.** On rails or tracks.

**4.** "Your covered auto" means a "motor vehicle":

**a.** To which Part I of this policy applies and for which a specific premium is charged; and

**b.** For which First Party Benefits Coverage required by the Act is maintained.

## EXCLUSIONS

**A.** We do not provide First Party Benefits Coverage for "bodily injury" sustained by any "insured":

**1.** While intentionally causing or attempting to cause "bodily injury" to himself or any other

17

person. We will not pay accidental death on behalf of that "insured".

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a "motor vehicle" knowingly converted by that "insured". This exclusion (**A.4.**) does not apply to:

   a. You; or

   b. Any "family member".

5. Who, at the time of the accident, is:

   a. The owner of one or more registered "motor vehicles", none of which have in effect the financial responsibility required by the Act; or

   b. "Occupying" a "motor vehicle" owned by that "insured" for which the financial responsibility required by the Act is not in effect.

6. Maintaining or using a "motor vehicle" while located for use as a residence or premises.

7. While "occupying" a:

   a. Recreational vehicle designed for use off public roads; or

   b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for "bodily injury":

1. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (**B.1.**) does not apply to:

   a. You; or

   b. Any "family member".

2. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

18

From, or as a consequence of the following, whether controlled or uncontrolled or however caused:

   **a.** Nuclear reaction;

   **b.** Radiation; or

   **c.** Radioactive contamination

## LIMIT OF LIABILITY

**A.** The First Party Benefits Coverage limit of liability shown in the Declarations that apply are the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

   **1.** Claims made.

   **2.** Vehicles or premiums shown in the Declarations.

   **3.** Vehicles involved in the accident.

   **4.** Insurers providing First Party Benefits or Extraordinary Medical Benefits.

**B.** If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (**B.**) will not change our maximum limit of liability.

**C.** Any amounts payable under this coverage shall be excess over any amounts:

   **1.** Paid;

   **2.** Payable; or

   **3.** Required to be provided;

to an "insured" under any workers' compensation law or similar law.

## PRIORITIES OF POLICIES

**A.** We will pay First Party Benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category is the lowest level of priority. The priority order is:

   **1.** First Priority:

The insurer providing benefits to the "insured" as a named insured.

**2.** Second Priority:

The insurer providing benefits to the "insured" as a family member who is not a named insured under another policy providing coverage under the Act.

**3.** Third Priority:

The insurer of the "motor vehicle" which the "insured" is "occupying" at the time of the accident.

**4.** Fourth Priority:

The insurer of any "motor vehicle" involved in the accident if the "insured" is not:

**a.** "Occupying" a "motor vehicle"; and

**b.** Provided first party benefits under any other automobile policy.

An unoccupied parked "motor vehicle" is not a "motor vehicle" involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

**B.** If two or more policies have equal priority within the highest applicable priority level:

**1.** The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles.

**2.** If we are the insurer against whom the claim is first made, our payment to or for an "insured" will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Declarations.

**3.** The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

20

**NON-DUPLICATION OF BENEFITS**

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

---

## PART III – (RESERVED FOR FUTURE USE)

---

## PART IV – COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to:

    **1.** "Your covered auto"; or

    **2.** A "non-owned auto";

including its permanently attached equipment, minus any applicable deductible shown in the Declarations.

**B.** We will pay for loss to "your covered auto" caused by:

    **1.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that vehicle.

    **2.** Other than "collision" only if the Declarations indicate that Comprehensive Coverage is provided for that vehicle.

**C.** If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**D.** Deductible

    **1.** If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision" or loss defined as other than "collision", only the highest applicable deductible will apply.

    **2.** No deductible will apply to a glass-only loss when the window glass is repaired instead of replaced.

21

   3.  No deductible will apply to loss to "your covered auto" from actual physical contact with another vehicle insured for liability coverage under a different policy, when:

   a.  The other vehicle is identified by its license number, or the owner or operator is identified; and

   b.  The owner or operator of the other vehicle is deemed by us to be principally at fault for the loss; and

   c.  The amount of recoverable damages exceeds your deductible.

E.  "Collision" means the upset of "your covered auto" or a "non-owned auto" or its impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

   1.  Missiles or falling objects.

   2.  Fire.

   3.  Theft or larceny.

   4.  Explosion or earthquake.

   5.  Windstorm.

   6.  Hail, water, or flood.

   7.  Malicious mischief or vandalism.

   8.  Riot or civil commotion.

   9.  Contact with bird or animal.

   10. Breakage of glass.

      If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

F.  As used in this Part only, "non-owned auto" means:

   1.  Any "auto" or "trailer" not owned by or furnished or available for the regular use of you or a "family member" while":

   a.  In the custody of; or

   b.  Being operated by;

      you or any "family member", provided such operation is with the express or implied

22

permission of the owner and within the scope of that permission.

2. Any "auto" or "trailer" you do not own while used as a temporary substitute for a "your covered auto" which is out of normal use because of:

   **a.** Breakdown.

   **b.** Repair.

   **c.** Servicing.

   **d.** Loss.

   **e.** Destruction.

**G.** "Special equipment" means any equipment, device, part, furnishing or accessory, other than those which are original manufacturer installed in or upon any "auto", which is permanently installed or attached.

"Special equipment" includes but is not limited to:

**1.** Special carpeting or insulation.

**2.** Furniture or wet or dry bars.

**3.** Height-extending roofs.

**4.** Body, engine, exhaust or suspension enhancers.

**5.** Winches or tow bars.

**6.** Anti-roll or anti-sway bars.

**7.** Custom grills, louvers, side pipes, hood scoops or spoilers.

**8.** Custom wheels, tires or spinners.

**9.** Custom chrome, murals, paintwork, decals, or other graphics.

**10.** Caps, covers or bedliners.

**11.** Camper shells.

**12.** Electronic equipment, antennas, and other devices used to send or receive audio, visual or data signals, or to play back recorded media.

**13.** Any dealer-installed equipment, furnishings, parts, devices and accessories that modify, replace or add to original manufacturer installed equipment.

**14.** Bumpers and other metal work designed to protect the vehicle or its component parts from damage.

"Special equipment" does not include electronic audio equipment replacing original manufacturer installed equipment if it:

**1.** Is installed in locations used by the automobile manufacturer for installation of such equipment; and

**2.** Is of like kind and quality as the original manufacturer installed equipment.

**H.** As used in this Part only, "your covered auto" means:

**1.** Any motor vehicle shown in the Declarations.

**2.** A "newly acquired auto".

**3.** Any "trailer" or camper body shown in the Declarations.

## TRANSPORTATION EXPENSES

**A.** We will pay, without application of a deductible, up to $20 per day for:

**1.** Temporary transportation expenses that you incur in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

   **a.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that vehicle.

   **b.** Other than "collision" only if the Declarations indicate that Comprehensive Coverage is provided for that vehicle.

**2.** Expenses for which you are legally responsible due to loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

   **a.** "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

   **b.** Other than "collision" only if the Declarations indicate that

Comprehensive Coverage is provided for any "your covered auto".

We will pay for these expenses up to a maximum of 30 days.

**B.** Subject to the provisions of Paragraph **A.**, if the loss is caused by:

   **1.** A total theft, we will pay only expenses incurred during the period:

      **a.** Beginning 48 hours after the theft; and

      **b.** Ending when the vehicle is returned to use or we pay for its loss.

   **2.** Other than theft, we will pay only expenses beginning when the vehicle is withdrawn from use for more than 24 hours.

**C.** Our payment is limited to the period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**D.** If the expense is for the use of a rental vehicle, the rental must be obtained from a licensed rental agency.

Transportation Expenses shall not apply to the "your covered auto" if Rental Car Reimbursement Coverage applies.

## EXCLUSIONS

We will not pay for:

**1.** Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used to carry persons or property for a charge. This Exclusion **(1.)** does not apply to an "auto" while used:

   **a.** In a shared-expense car pool; or

   **b.** To provide "volunteer services".

**2.** Loss to "your covered auto" while leased or rented to others, including while used in a "personal vehicle share program".

**3.** Damage caused by and resulting from:

   **a.** Wear and tear.

   **b.** Deterioration.

   **c.** Freezing.

**d.** Mechanical or electrical breakdown or failure.

**e.** Faulty workmanship.

**f.** Road damage to tires.

This Exclusion **(3.)** does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

**4.** Loss due to or as a consequence of:

    **a.** Radioactive contamination.

    **b.** Discharge of any nuclear weapon (even if accidental).

    **c.** War (declared or undeclared).

    **d.** Civil war.

    **e.** Insurrection.

    **f.** Rebellion or revolution.

**5.** Any equipment that is not permanently attached to the vehicle.

**6.** A total loss to "your covered auto" or any "non-owned auto" due to:

    **a.** Destruction or confiscation by governmental or civil authorities.

    **b.** Repossession by the rightful owner.

This Exclusion **(6.)** does not apply to the interests of Loss Payees in "your covered auto".

**7.** Loss to:

    **a.** A "trailer", camper body or motor home, which is owned by you and not shown in the Declarations.

    **b.** Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

        **(1)** Cooking, dining, plumbing or refrigeration facilities;

        **(2)** Awnings or cabanas; or

        **(3)** Any other facilities or equipment used with a "trailer", camper body or motor home.

This Exclusion **(7.)** does not apply to a:

"trailer", camper body or the facilities or equipment, which you do not own.

**b.** "Trailer", camper body or the facilities or equipment in or attached to the "trailer" or camper body, which you:

    **(1)** Acquire during the policy period; and

    **(2)** Ask us to insure within 30 days after you become the owner.

**8.** Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

**9.** Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "auto business".

**10.** Loss to "your covered auto" or any "non-owned auto" while used in a "race or speed contest".

**11.** Loss to, or loss of use of, a "non-owned auto" rented by:

    **a.** You; or

    **b.** Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", under the terms of a rental agreement or state law.

**12.** Loss to "your covered auto" or any "non-owned auto" due to "diminution in value" of the vehicle or its equipment. "Diminution in value" means the actual or perceived loss in market value, however measured, which results from a loss, repair or replacement due to a loss.

**13.** Loss to "your covered auto" or any "non-owned auto" caused intentionally by, or at the direction of, any "insured". However, this exclusion **(13.)** does not apply to the insurable interest of an insured who did not contribute to or cooperate in the cause of the loss if the loss results from an act of abuse. Abuse means:

**(a)** Abuse as defined in the Pennsylvania Protection From Abuse Act; or

**(b)** Attempting to cause or intentionally, knowingly or recklessly causing damage to

property so as to intimidate or attempt to control the behavior of another person.

## LIMIT OF LIABILITY

**A.** Our limit of liability for loss will be the lowest of the:

1. Actual cash value of the stolen or damaged property;

2. Amount necessary to repair or replace the property with other property of like kind and quality; or

3. The limit of liability, if one is shown, in the Declarations. This limit is the total limit of liability applicable to the "your covered auto", including its "special equipment".

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a "trailer" is $1,500.

2. "Special equipment" in or upon "your covered auto" (other than a "trailer", camper body or motor home shown in the Declarations) or any "non-owned auto" is $1,500.

**B.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

**C.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property, we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto".

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   1. Pay its chosen appraiser; and

   2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART V – DUTIES AFTER AN ACCIDENT OR LOSS

If an accident or loss occurs, the following must be done for the terms of the policy to apply:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

   **1.** Cooperate with us in the investigation, settlement or defense of any claim or lawsuit.

   **2.** Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

   **3.** Submit, as often as we reasonably require:

      **a.** To medical exams by physicians we select. We will pay for these exams.

      **b.** To examination under oath and subscribe the same.

   **4.** Authorize us to obtain:

      **a.** Medical records and reports; and

      **b.** Other pertinent records.

   **5.** Submit a signed proof of loss when required by us.

**C.** A person seeking Uninsured or Underinsured Motorists Coverage must also:

   **1.** Promptly notify the police if a hit-and-run driver is involved.

   **2.** Promptly send us copies of the legal papers if a lawsuit is brought.

**D.** A person seeking Coverage For Damage To Your Auto must also:

   **1.** Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and its equipment from further loss. We will pay reasonable expenses incurred to do this.

30

2. Promptly notify the police if your "covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

## PART VI – GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles.

2. Operators using insured vehicles.

3. The place of principal garaging of insured vehicles.

4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will do so in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, the change will apply to your policy as of the date we make the change in your state. This Paragraph **(C.)** does not apply to changes which are part of a general program revision that includes both broadenings and restrictions in coverage, whether the changes are made by:

1. A subsequent edition of your policy; or

31

## SMALL PREMIUM ADJUSTMENTS

When a change or cancellation results in an additional or return premium of $5 or less, no charge or return will be made. However, if any future bill is sent to you the balance due will reflect a charge or credit for any small premium adjustments of $5 or less. You have the right to all return premiums. Refunds of $5 or less will be made if specifically requested by you.

## CONCEALMENT OR FRAUD

We do not provide coverage to an "insured" who, whether before or after a loss, has:

1. Knowingly concealed or misrepresented any material fact or circumstance;

2. Engaged in fraudulent conduct; or

3. Made false statements;

relating to this insurance.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part I, no legal action may be brought against us until:

   1. We agree in writing that the "insured" has an obligation to pay; or

   2. The amount of that obligation has been determined by final judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

A. If a person to or for whom payment was made under this policy has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights.

32

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   **1.** Hold in trust for us the proceeds of the recovery.

   **2.** Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

This provision does not apply to Part **II**.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

   **1.** During the Policy Period as shown in the Declarations; and

   **2.** Within the Policy Territory.

**B.** The Policy Territory is:

   **1.** The United States of America, its territories or possessions; or

   **2.** Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

**A. Cancellation**

This policy may be cancelled during the policy period as follows:

   **1.** The Named Insured shown in the Declarations may cancel by:

   **a.** Returning this policy to us; or

   **b.** Giving us advance notice of the date cancellation is to take effect.

   **2.** We may cancel by mailing to the Named Insured shown in the Declarations at the address shown in this policy:

   **a.** At least 15 days notice of cancellation:

33

**(1)** If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

**(2)** For nonpayment of premium; or

**(3)** If the driver's license of the Named Insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

**b.** At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the Named Insured shown in the Declarations at the address shown in this policy:

**1.** At least 15 days notice before the end of the policy period:

**a.** For nonpayment of premium; or

**b.** If the driver's license of the Named Insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

**2.** At least 60 days notice before the end of the policy period in all other cases.

However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**C. Automatic Termination**

34

1. This policy will automatically terminate at the end of the policy period if you or your representative do not accept our offer to renew this policy. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

2. Coverage for any "your covered auto" will automatically terminate when a person other than you or a "family member" becomes the owner of that "your covered auto".

**D.  Other Termination Provisions**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## UNCLAIMED PROPERTY

Any check, bank draft or other form of payment issued by us with respect to this policy is subject to an administrative fee of $2.00 if the check, bank draft or other form of payment has not been presented for payment or otherwise collected prior to the time the check, bank draft or other form of payment becomes unclaimed property under the laws of the state of residence of the payee.  This applies to payment on account of claims, return of premium or any other amount payable by us.  This clause is void where prohibited by law.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a Named Insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse, "domestic partner" or partner in a "civil union" if a "resident" in the same household at the time of death. Coverage applies to the spouse, "domestic partner" or partner in a "civil union" as if a Named Insured shown in the Declarations; and

2. The legal representative of the deceased person as if a Named Insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTOMOBILE POLICIES

If two or more policies issued to you by us apply to the same accident, the most we will pay under all policies shall not exceed the highest applicable limit of liability under any one policy.

## CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

## TERMS OF POLICY CONFORMED TO STATUTES

If any provision of this policy fails to conform to the legal requirements of the Commonwealth of Pennsylvania, the provision shall be deemed amended to conform to such legal requirements. All other provisions shall be given full force and effect. Any disputes as to the coverage provided or the provisions of this policy shall be governed by the laws of the Commonwealth of Pennsylvania.

In Witness Whereof, the Company as duly authorized representatives has caused this policy to be signed by its President and Secretary.

President                    Secretary

OPTIONAL COVERAGE ENDORSEMENTS

The following apply only if listed in the Declarations by Endorsement Number.

---

## EXTRAORDINARY MEDICAL BENEFITS COVERAGE
### EMBPA 01 13

---

With respect to the coverage provided by this endorsement, the provisions of Part II – First Party Benefits Coverage apply unless modified by the endorsement.

## LIMITED BENEFITS

**THIS ENDORSEMENT PROVIDES COVERAGE ONLY FOR MEDICAL EXPENSES**

**WARNING**

**YOU SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO THE FIRST $100,000 OF MEDICAL EXPENSES INCURRED BY AN "INSURED". YOU CAN AVOID HAVING TO PAY SOME OF YOUR OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A $100,000 LIMIT OF LIABILITY FOR MEDICAL EXPENSES.**

## INSURING AGREEMENT

**A.** We will pay, in accordance with the Act, Extraordinary Medical Benefits to or for an "insured" who sustains "bodily injury". The "bodily injury" must be caused by an accident arising out of the maintenance or use of a "motor vehicle".

**B.** Subject to the limit shown in the Declarations, Extraordinary Medical Benefits consist of:

    **1.** Medical expenses. Reasonable and necessary medical expenses incurred for an "insured's":

        **a.** Care;

38

**b.** Recovery; or

**c.** Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized method of healing.

**C.** Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay Extraordinary Medical Benefits only after $100,000 of medical expenses has been incurred by any one "insured" as a result of any one accident.

## EXCLUSIONS

The following exclusion is added:

We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an "insured" as a result of an accident.

## LIMIT OF LIABILITY

**A.** The Extraordinary Medical Benefits limit of liability shown in the Declarations is the most we will pay to or for each "insured" as the result of any one accident, regardless of the number of:

**1.** Claims made.

**2.** Vehicles or premiums shown in the Declarations.

**3.** Vehicles involved in the accident.

**4.** Insurers providing extraordinary medical benefits.

Extraordinary Medical Benefits are subject to an annual limit of $50,000 for each "insured". However, this limit does not apply to medical expenses incurred within 18 months from the date the "insured" incurs $100,000 of medical expenses as a result of the accident.

**B.** Any amounts payable under this coverage shall be excess over any amounts available to an "insured" for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

**C.** If an "insured" is eligible for benefits under both this coverage and the Catastrophic Loss Trust

39

Fund, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Declarations.

**D.** Any amounts payable under this coverage shall be excess over any amount:

1. Paid;

2. Payable; or

3. Required to be provided;

to an "insured" under any workers' compensation law or similar law.

**ADDITIONAL DUTIES**

A person seeking Extraordinary Medical Benefits Coverage must submit proof, when required by us, that at least $100,000 of medical expenses has been incurred as the result of any one accident by an "insured".

**STRUCTURED SETTLEMENTS**

If payment of medical expenses in the form of a structured settlement will be:

1. Cost effective for us; and

2. In the best interest of an "insured";

we and the "insured" may make an agreement, about the timing and amount of payments under this coverage, which is mutually satisfactory. This agreement may include annuities or other long-term payment arrangements.

40

## FULL COMPREHENSIVE SAFETY GLASS COVERAGE ENDORSEMENT
### AASGXX 01 12

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

As used in this endorsement only, "your covered auto" means any "auto" shown in the Declarations.

The following is added to the Insuring Agreement in Part **IV**:

**A.** We will pay under Comprehensive Coverage for the cost of replacing damaged "safety glass" on "your covered auto" without a deductible. We will pay only if:

   **1.** The Declarations indicate that Comprehensive Coverage applies; and

   **2.** Full Comprehensive Safety Glass Coverage is shown in the Declarations as applicable to that vehicle.

**B.** As used for this coverage only, "safety glass" means the glass used in the windshield, doors, windows and roof of "your covered auto".

## NEW CAR ADDED PROTECTION COVERAGE ENDORSEMENT
### AANCXX 01 12

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

As used in this endorsement only, "your covered auto" means any "auto" shown in the Declarations.

The following is added to the Insuring Agreement and is in addition to any coverage provided in Part **IV**:

In the event of a covered total loss to a "your covered auto", we will pay to replace that vehicle if:

41

1. Collision Coverage and Comprehensive Coverage are shown in the Declarations as applicable to that vehicle;

2. New Car Added Protection Coverage is shown in the Declarations as applicable to that vehicle;

3. You are the original owner of that vehicle; and

4. The covered total loss occurs during a policy period that began any time during a calendar year in which that vehicle was two model years old or less.

The amount we pay to replace the "your covered auto" will not exceed the cost of:

1. A new vehicle of the same make and model with the same equipment; or,

2. If a new vehicle of the same make and model with the same equipment is not available, the cost of a new vehicle that is:

   a. Similar in size, class, body type and equipment; and

   b. Similar in price to the price you paid for the vehicle being replaced, as adjusted for inflation, but not to exceed an amount equal to 110% of the Manufacturer's Suggested Retail Price of the vehicle being replaced.

   A new vehicle is one that has not been previously titled and is of the latest model year available at the time of the loss.

This coverage applies to a "newly acquired auto" if the "newly acquired auto" qualifies for this coverage and if you ask us to insure it for this coverage within 30 days after you become the owner if the Declarations indicate that Collision Coverage, Comprehensive Coverage, and this coverage apply to at least one auto listed in the Declarations. However, this coverage does not apply to any damage that occurs prior to the inception of this endorsement for any auto.

This coverage does not apply to a leased vehicle.

New Car Added Protection Coverage is excess over any other collectible insurance.

**RENTAL CAR REIMBURSEMENT COVERAGE ENDORSEMENT**

**AA49XX 01 12**

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

As used in this endorsement only, "your covered auto" means any "auto" shown in the Declarations.

When there is a loss to a "your covered auto" for which Rental Car Reimbursement Coverage is shown in the Declarations as applicable to that vehicle:

**A.** We will pay, without application of a deductible, up to the limit of liability shown in the Declarations for each day for:

    **1.** Temporary transportation expenses that you incur in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

        **a.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that vehicle.

        **b.** Other than "collision" only if the Declarations indicate that Comprehensive Coverage is provided for that vehicle.

    **2.** Expenses for which you are legally responsible due to loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

        **a.** "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

        **b.** Other than "collision" only if the Declarations indicate that Comprehensive Coverage is provided for any "your covered auto".

We will pay these expenses up to a maximum of 30 days.

**B.** Subject to the provisions of Paragraph **A.**, if the loss is caused by:

43

1. A total theft, we will pay only expenses incurred during the period:

    a. Beginning 48 hours after the theft; and

    b. Ending when the vehicle is returned to use or we pay for its loss.

    2. Other than theft, we will pay only expenses beginning when the vehicle is withdrawn from use for more than 24 hours.

C. Our payment is limited to the period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

D. If the expense is for the use of a rental vehicle, the rental must be obtained from a licensed rental agency.

---

## SPECIAL EQUIPMENT COVERAGE ENDORSEMENT

### AA09XX 01 12

---

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

As used in this endorsement only, "your covered auto" means any "auto" shown in the Declarations.

The following modifies Paragraph **A.** of the Limit of Liability Provision in Part **IV**:

The most we will pay for loss to any "special equipment" in or upon:

1. "Your covered auto" is increased from $1,500 to the limit for Special Equipment Coverage shown as applicable to that vehicle in the Declarations.

2. Any "non-owned auto" is increased from $1,500 to the highest limit for Special Equipment Coverage shown in the Declarations.

This coverage does not apply to furnishings or equipment that are excluded from coverage under Exclusion **7.** of Part **IV**.

**NOTICE**

44

Special equipment may not increase the actual cash value of a vehicle. Please refer to Part **IV** for our limit of liability in the event of a total loss.

---

## TOWING AND LABOR COSTS COVERAGE ENDORSEMENT
### AA47XX 01 12

---

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

As used in this endorsement only, "your covered auto" means any "auto" shown in the Declarations.

We will pay towing and labor costs incurred each time "your covered auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle.

If a "non-owned auto" is disabled, we will provide the broadest Towing and Labor Costs Coverage applicable to any "your covered auto" shown in the Declarations.

We will only pay for labor performed at the place of disablement.

---

## VEHICLE LOAN/LEASE PROTECTION COVERAGE ENDORSEMENT
### AACLXX 01 12

---

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

As used in this endorsement only, "your covered auto" means any "auto" shown in the Declarations.

The following is added to the Insuring Agreement in Part **IV**:

In the event of a covered total loss to a "your covered auto" for which Vehicle Loan/Lease Coverage is shown in the Declarations as applicable

45

to that vehicle, we will pay any unpaid amount due on the loan or lease for "your covered auto" less:

1. The amount paid under Part **IV** of the policy; and

2. Any:

   a. Overdue loan/lease payments at the time of the loss.

   b. Financial penalties imposed under a lease for excessive use, abnormal wear and tear or high mileage.

   c. Security deposits not refunded by a lessor.

   d. Costs for extended warranties, Credit Life insurance, Health, Accident or Disability insurance purchased with the loan or lease.

   e. Carry-over balances from previous loans or leases.

47

Includes copyrighted material of Insurance Services Office,
Inc., with its permission
Copyright, Insurance Services Office, Inc., 1985, 1986, 1988,
1992, 1993, 1999, 2003, 2004, 2008, 2009, 2010

# EXHIBIT B

 **MARKET VALUATION REPORT**

*Prepared for CSAA IE*

 # REPORT SUMMARY

## CLAIM INFORMATION

| | |
|---|---|
| Owner | Siler, Sandra |
| | 1486 Sullivan Trl |
| | Tannersville, PA 18372 |
| Loss Vehicle | 2009 Suzuki SX4 Automatic AWD w/ Touring Pkg |
| Loss Incident Date | 11/02/2017 |
| Claim Reported | 11/13/2017 |

 ## INSURANCE INFORMATION

| | |
|---|---|
| Report Reference Number | 86623649 |
| Claim Reference | 1002-37-7700.1 |
| Adjuster | Puff, Timothy |
| Appraiser | Starsinic Appraisals |
| Appr. License: | 095926 |
| Odometer | 128,642 |
| Last Updated | 11/13/2017 08:52 AM |

## VALUATION SUMMARY

| | |
|---|---|
| **Pennsylvania Statewide Value** | **$ 5,520.00** |
| **Base Vehicle Value** | **$ 5,149.00** |
| **CCC Valuation (average of statewide and base vehicle values)** | **$ 5,334.50** |
| **Adjusted Vehicle Value** | **$ 5,334.50** |
| Vehicular Tax (6%) | + $ 320.07 |
| Tax reflects applicable state, county and municipal taxes. | |

| **Total** | **$ 5,654.57** |
|---|---|

Appraiser's Signature: ...................................................

The total may not represent the total of the settlement as other factors (e.g. license and fees) may need to be taken into account.

The CCC ONE® Market Valuation Report reflects CCC Information Services Inc.'s opinion as to the value of the loss vehicle, based on information provided to CCC by CSAA IE.

Loss vehicle has 24% greater than average mileage of 104,100.

**PENNSYLVANIA STATEWIDE VALUE**

The Pennsylvania Statewide Value is based on all Pennsylvania valuations for a similarly equipped 2009 Suzuki SX4

**BASE VEHICLE VALUE**

This is derived from comparable vehicle(s) available or recently available in the marketplace at the time of valuation, per our valuation methodology described on the next page.

**ADJUSTED VEHICLE VALUE**

This is determined by adjusting the CCC Valuation Amount to account for the actual condition of the loss vehicle and certain other reported attributes, if any, such as refurbishments and after factory equipment.

### Inside the Report

Valuation Methodology.............................3
Vehicle Information...................................4
Vehicle Condition.....................................7
Comparable Vehicles...............................8
Valuation Notes.......................................9

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE. MARKET VALUATION REPORT**

Owner: Siler, Sandra
Claim: 1002-37-7700.1

# REPORT SUMMARY

Supplemental Information........................10

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC ONE.  MARKET VALUATION REPORT**  | Owner: Siler, Sandra
Claim: 1002-37-7700.1

# VALUATION METHODOLOGY

## How was the valuation determined?



### CLAIM INSPECTION

CSAA IE has provided CCC with the zip code where the loss vehicle is garaged, loss vehicle VIN, mileage, equipment, as well as loss vehicle condition, which is used to assist in determining the value of the loss vehicle.



### DATABASE REVIEW

CCC maintains an extensive database of vehicles that currently are or recently were available for sale in the U.S. This database includes vehicles that CCC employees have physically inspected, as well as vehicles advertised for sale by dealerships or private parties. All of these sources are updated regularly.

### SEARCH FOR COMPARABLES

When a valuation is created the database is searched and comparable vehicles in the area are selected. The zip code where the loss vehicle is garaged determines the starting point for the search. Comparable vehicles are similar to the loss vehicle based on relevant factors.



### CALCULATE BASE VEHICLE VALUE

Adjustments to the price of the selected comparable vehicles are made to reflect differences in vehicle attributes, including mileage and options. Dollar adjustments are based upon market research.

Finally, the Base Vehicle Value is the weighted average of the adjusted values of the comparable vehicles based on the following factors:
- Source of the data (such as inspected versus advertised)
- Similarity (such as equipment, mileage, and year)
- Proximity to the loss vehicle's primary garage location
- Recency of information



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC ONE. MARKET VALUATION REPORT

Owner: Siler, Sandra
Claim: 1002-37-7700.1

 VEHICLE INFORMATION

## VEHICLE DETAILS

| | |
|---|---|
| Location | TANNERSVILLE, PA 18372 |
| VIN | JS2YB417996200195 |
| Year | 2009 |
| Make | Suzuki |
| Model | SX4 |
| Body Style | Automatic AWD w/Touring Pkg |
| Body Type | Hatchback |
| Engine - | |
| Cylinders | 4 |
| Displacement | 2.0L |
| Fuel Type | Gasoline |
| Carburation | MPFI |
| Transmission | Automatic Transmission 4 Wheel Drive |
| Curb Weight | 2855 lbs |

Vehicles sold in the United States are required to have a manufacturer assigned Vehicle Identification Number(VIN). This number provides certain specifications of the vehicle.

Please review the information in the Vehicle Information Section to confirm the reported mileage and to verify that the information accurately reflects the options, additional equipment or other aspects of the loss vehicle that may impact the value.

 CCC ONE. **MARKET VALUATION REPORT** | Owner: Siler, Sandra
Claim: 1002-37-7700.1

# 🚙 VEHICLE INFORMATION

## VEHICLE EQUIPMENT

To the left is the equipment of the loss vehicle that CSAA IE provided to CCC.

✔ **Standard** This equipment is included in the base configuration of the vehicle at time of purchase.

⊟ **Additional** Equipment that is not Standard but was noted to be on the loss vehicle.

| | | |
|---|---|---|
| **Odometer** | 128,642 | |
| **Transmission** | Automatic Transmission | ✔ |
| | 4 Wheel Drive | ✔ |
| **Power** | Power Steering | ✔ |
| | Power Brakes | ✔ |
| | Power Windows | ✔ |
| | Power Locks | ✔ |
| | Power Mirrors | ✔ |
| **Decor/Convenience** | Air Conditioning | ✔ |
| | Climate Control | ✔ |
| | Tilt Wheel | ✔ |
| | Cruise Control | ✔ |
| | Rear Defogger | ✔ |
| | Intermittent Wipers | ✔ |
| | Navigation System | ✔ |
| | Keyless Entry | ✔ |
| **Seating** | Cloth Seats | ✔ |
| | Bucket Seats | ✔ |
| | Heated Seats | ✔ |
| **Radio** | AM Radio | ✔ |
| | FM Radio | ✔ |
| | Stereo | ✔ |
| | Search/Seek | ✔ |
| | Steering Wheel Touch Controls | ✔ |
| | Auxiliary Audio Connection | ✔ |
| | CD Changer/Stacker | ✔ |
| **Wheels** | Aluminum/Alloy Wheels | ✔ |
| **Roof** | Luggage/Roof Rack | ✔ |
| **Safety/Brakes** | Air Bag (Driver Only) | ✔ |
| | Passenger Air Bag | ✔ |
| | Anti-lock Brakes (4) | ✔ |
| | 4-wheel Disc Brakes | ✔ |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.



**CCC ONE. MARKET VALUATION REPORT** | Owner: Siler, Sandra
Claim: 1002-37-7700.1

# 🚗 VEHICLE INFORMATION

## VEHICLE EQUIPMENT



|  |  |  |
|---|---|---|
|  | Front Side Impact Air Bags | ✔ |
|  | Head/Curtain Air Bags | ✔ |
|  | Hands Free | ✔ |
|  | Traction Control | ✔ |
|  | Stability Control | ✔ |
| **Exterior/Paint/Glass** | Dual Mirrors | ✔ |
|  | Heated Mirrors | ✔ |
|  | Tinted Glass | 📄 |
|  | Fog Lamps | ✔ |
|  | Rear Spoiler | ✔ |
|  | Rear Window Wiper | ✔ |
|  | Clearcoat Paint | 📄 |
|  | Metallic Paint | 📄 |

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE. MARKET VALUATION REPORT**

# 🚌 VEHICLE CONDITION

## COMPONENT CONDITION

| | Condition | Inspection Notes | Value Impact |
|---|---|---|---|
| **INTERIOR** | | | |
| Seats | AVERAGE PRIVATE | TYPICAL. VEHICLE WELL KEPT AND PRETTY CLEAN. | $ 0 |
| Carpets | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Glass | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Dashboard | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Headliner | AVERAGE PRIVATE | TYPICAL | $ 0 |
| **EXTERIOR** | | | |
| Sheet Metal | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Paint | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Trim | AVERAGE PRIVATE | TYPICAL | $ 0 |
| **MECHANICAL** | | | |
| Engine | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Transmission | AVERAGE PRIVATE | TYPICAL | $ 0 |
| Tires | AVERAGE PRIVATE | TYPICAL | $ 0 |
| | | | $ 0 |

CSAA IE uses condition inspection guidelines to determine the condition of key components of the loss vehicle prior to the loss. The guidelines describe physical characteristics for these key components, for the condition selected based upon age. Inspection Notes reflect observations from the appraiser regarding the loss vehicle's condition.

CCC makes dollar adjustments that reflect the impact the reported condition has on the value of the loss vehicle as compared to Average Private condition. These dollar adjustments are based upon interviews with dealerships across the United States.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC ONE.** MARKET VALUATION REPORT | Owner: Siler, Sandra
Claim: 1002-37-7700.1

# 🚗 COMPARABLE VEHICLES

| Source | Vehicle | Price | Adjusted Comparable Value |
|---|---|---|---|
| **Comp 1** | | | |
| Source: Inspected Inventory | **2009 Suzuki Sx4 Manual** | $ 6,494 | $ 4,558 |
| Rothrock Niss/dodg/chry/jeep | **Awd 4 2.0l Gasoline Mpfi** | (Take) | |
| Allentown, PA | Odometer: 77,609 | | |
| (610) 439-8485 | VIN: JS2YB413596601028 | | |
| 32 Miles From Tannersville, PA | Stock #: VIN1028 | | |
| | Updated Date: 10/11/2017 | | |
| **Comp 2** | | | |
| Source: Autotrader | **2009 Suzuki Sx4 Automatic** | $ 8,900 | $ 6,288 |
| Keystone Auto Sales | **Awd W/technology Pkg 4** | (List) | |
| Brodheadsville, PA | **2.0l Gasoline Mpfi** | | |
| (866) 427-0792 | Odometer: 62,331 | | |
| 9 Miles From Tannersville, PA | VIN: JS2YB413896204834 | | |
| | Stock #: 6632 | | |
| | Updated Date: 11/03/2017 | | |
| **Comp 3** | | | |
| Source: Autotrader | **2009 Suzuki Sx4 Manual** | $ 4,495 | $ 5,005 |
| Customer 1 Auto | **Awd 4 2.0l Gasoline Mpfi** | (List) | |
| Lehighton, PA | Odometer: 185,121 | | |
| (610) 377-1777 | VIN: JS2YB413295100765 | | |
| 24 Miles From Tannersville, PA | Stock #: C11639 | | |
| | Updated Date: 08/15/2017 | | |

**Comparable vehicles** used in the determination of the Base Vehicle Value are not intended to be replacement vehicles but are reflective of the market value, and may no longer be available for sale.

**List Price** is the sticker price of an inspected dealer vehicle and the advertised price for the advertised vehicle.

**Take Price** is the amount that the dealership will accept to sell the inspected vehicle, though a lower price may be obtainable through negotiation.

**Distance** is based upon a straight line between loss and comparable vehicle locations.

**Adjusted Comparable Value** represents the price of the comparable vehicle with adjustments for options, mileage, condition, and year/model/trim as compared to the loss vehicle.

A condition adjustment is also made to set the comparable vehicle to Average Private condition, which the loss vehicle is also compared to in the Vehicle Condition section.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⊠ONE. MARKET VALUATION REPORT

# VALUATION NOTES

This Market Valuation Report has been prepared exclusively for use by CSAA IE, and no other person or entity is entitled to or should rely upon this Market Valuation Report and/or any of its contents. CCC is one source of vehicle valuations, and there are other valuation sources available.

Regulations concerning vehicle value include Pennsylvania Administrative Code Section 62.3. Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete, or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 **CCC☰ONE.** MARKET VALUATION REPORT | Owner: Siler, Sandra
Claim: 1002-37-7700.1

# SUPPLEMENTAL INFORMATION

## VEHICLE HISTORY INFORMATION

### VINguard®

VINguard® Message: VINguard has decoded this VIN without any errors

### Collision History Information:

COLLISION INCIDENT REPORTED BY ERIE INSURANCE GROUP ON 09/21/2011

Claim #: 010181025443002 in TANNERSVILLE, PA

Repair Estimate: 1694.52                    Miles: 035234

Damage Location:        LEFT T- BONE (LEFT SIDE)
                        UNKNOWN



© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⬛ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

 **EXPERIAN® AUTOCHECK® VEHICLE HISTORY REPORT**

| TITLE CHECK | RESULTS FOUND |
|---|---|
| Abandoned | ✔ No Abandoned Record Found |
| Damaged | ✔ No Damaged Record Found |
| Fire Damage | ✔ No Fire Damage Record Found |
| Grey Market | ✔ No Grey Market Record Found |
| Hail Damage | ✔ No Hail Damage Record Found |
| Insurance Loss | ✔ No Insurance Loss Record Found |
| Junk | ✔ No Junk Record Found |
| Rebuilt | ✔ No Rebuilt Record Found |
| Salvage | ✔ No Salvage Record Found |

| EVENT CHECK | RESULTS FOUND |
|---|---|
| NHTSA Crash Test Vehicle | ✔ No NHTSA Crash Test Vehicle Record Found |
| Frame Damage | ✔ No Frame Damage Record Found |
| Major Damage Incident | ✔ No Major Damage Incident Record Found |
| Manufacturer Buyback/Lemon | ✔ No Manufacturer Buyback/Lemon Record Found |
| Odometer Problem | ✔ No Odometer Problem Record Found |
| Recycled | ✔ No Recycled Record Found |
| Water Damage | ✔ No Water Damage Record Found |
| Salvage Auction | ✔ No Salvage Auction Record Found |

| VEHICLE INFORMATION | RESULTS FOUND |
|---|---|
| Accident | ▣ Accident Record Found |
| Corrected Title | ✔ No Corrected Title Record Found |
| Driver Education | ✔ No Driver Education Record Found |
| Fire Damage Incident | ✔ No Fire Damage Incident Record Found |
| Lease | ✔ No Lease Record Found |
| Lien | ✔ No Lien Record Found |
| Livery Use | ✔ No Livery Use Record Found |
| Government Use | ✔ No Government Use Record Found |
| Police Use | ✔ No Police Use Record Found |
| Fleet | ✔ No Fleet Record Found |
| Rental | ✔ No Rental Record Found |
| Fleet and/or Rental | ✔ No Fleet and/or Rental Record Found |
| Repossessed | ✔ No Repossessed Record Found |
| Taxi use | ✔ No Taxi use Record Found |
| Theft | ✔ No Theft Record Found |
| Fleet and/or Lease | ✔ No Fleet and/or Lease Record Found |
| Emissions Safety Inspection | ✔ No Emissions Safety Inspection Record Found |
| Duplicate Title | ✔ No Duplicate Title Record Found |

CCC provides CSAA IE information reported by Experian regarding the **2009 Suzuki SX4 (JS2YB417996200195)**. This data is provided for informational purposes. Unless otherwise noted in this Valuation Detail, CCC does not adjust the value of the loss vehicle based upon this information.

**LEGEND :**
✔ No Event Found
⊘ Event Found
▣ Information Needed

**TITLE CHECK**
**THIS VEHICLE CHECKS OUT**
AutoCheck's result for this loss vehicle show no significant title events. When found, events often indicate automotive damage or warnings associated with the vehicle.

**EVENT CHECK**
**THIS VEHICLE CHECKS OUT**
AutoCheck's result for this loss vehicle show no historical events that indicate a significant automotive problem. These problems can indicate past previous car damage, theft, or other significant problems.

**VEHICLE INFORMATION**
**INFORMATION FOUND**
AutoCheck found additional information on this vehicle. These records will provide more history for this loss vehicle

**ODOMETER CHECK**
**THIS VEHICLE CHECKS OUT**
AutoCheck's result for this loss vehicle show no indication of odometer rollback or tampering was found. AutoCheck determines odometer rollbacks by searching for records that indicate odometer readings less than a previously reported value. Other odometer events can report events of tampering, or possible odometer breakage.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

 CCC**ONE**. MARKET VALUATION REPORT | Owner: Siler, Sandra
Claim: 1002-37-7700.1

# SUPPLEMENTAL INFORMATION

## 📖 FULL HISTORY REPORT RUN DATE: 11/13/2017

Below are the historical events for this vehicle listed in chronological order.

| EVENT DATE | RESULTS FOUND | ODOMETER READING | DATA SOURCE | EVENT DETAIL |
|---|---|---|---|---|
| 12/11/2008 | | | Independent Source | VEHICLE MANUFACTURED AND SHIPPED TO DEALER |
| 07/17/2009 | SCOTRUN, PA | 32 | Motor Vehicle Dept. | TITLE (Lien Reported) |
| 07/17/2009 | SCOTRUN, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 01/09/2010 | LAS VEGAS, NV | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/29/2011 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/27/2012 | TANNERSVILLE, PA | | Motor Vehicle Dept. | TITLE |
| 04/27/2012 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/30/2012 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/26/2013 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/28/2014 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/22/2015 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 06/27/2015 | LEHIGH COUNTY, PA | | State Agency | ACCIDENT REPORTED |
| 06/27/2015 | PA | | Police Report | REAR IMPACT COLLISION |
| 06/27/2015 | PA | | Police Report | ACCIDENT REPORTED |
| 06/27/2015 | PA | | State Agency | MODERATE DAMAGE REPORTED |
| 04/28/2016 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |
| 04/20/2017 | TANNERSVILLE, PA | | Motor Vehicle Dept. | REGISTRATION EVENT/ RENEWAL |

**AUTOCHECK TERMS AND CONDITIONS:**

Experian's Reports are compiled from multiple sources. It is not always possible for Experian to obtain complete discrepancy information on all vehicles; therefore, there may be other title brands, odometer readings or discrepancies that apply to a vehicle that are not reflected on that vehicle's Report. Experian searches data from additional sources where possible, but all discrepancies may not be reflected on the Report.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

**CCC≋ONE.  MARKET VALUATION REPORT**

# SUPPLEMENTAL INFORMATION

These Reports are based on information supplied to Experian by external sources believed to be reliable, BUT NO RESPONSIBILITY IS ASSUMED BY EXPERIAN OR ITS AGENTS FOR ERRORS, INACCURACIES OR OMISSIONS. THE REPORTS ARE PROVIDED STRICTLY ON AN "AS IS WHERE IS" BASIS, AND EXPERIAN FURTHER EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE REGARDING THIS REPORT.

YOU AGREE TO INDEMNIFY EXPERIAN FOR ANY CLAIMS OR LOSSES, INCLUDING COSTS, EXPENSES AND ATTORNEYS FEES, INCURRED BY EXPERIAN ARISING DIRECTLY OR INDIRECTLY FROM YOUR IMPROPER OR UNAUTHORIZED USE OF AUTOCHECK VEHICLE HISTORY REPORTS.

Experian shall not be liable for any delay or failure to provide an accurate report if and to the extent which such delay or failure is caused by events beyond the reasonable control of Experian, including, without limitation, "acts of God", terrorism, or public enemies, labor disputes, equipment malfunctions, material or component shortages, supplier failures, embargoes, rationing, acts of local, state or national governments, or public agencies, utility or communication failures or delays, fire, earthquakes, flood, epidemics, riots and strikes.

These terms and the relationship between you and Experian shall be governed by the laws of the State of Illinois (USA) without regard to its conflict of law provisions. You and Experian agree to submit to the personal and exclusive jurisdiction of the courts located within the county of Cook, Illinois.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC⬛ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

 **NHTSA VEHICLE RECALL**

The National Highway Traffic Safety Administration has issued 3 safety related recall notices that may apply to the above valued vehicle.

**NHTSA Campaign ID :** 10V392000

**Mfg's Report Date :** SEP 01, 2010

**Component :** EQUIPMENT

**Potential Number Of Units Affected :** 20692

**Summary :** SUZUKI IS RECALLING CERTAIN MODEL YEAR 2008 THROUGH 2010 SX4, 2010 GRAND VITARA, AND 2009 THROUGH 2010 EQUATOR VEHICLES THAT WERE EQUIPPED WITH A GARMIN NUVI MODEL 750, 760, AND 765 NAVIGATION SYSTEM. THE BATTERIES CONTAINED IN THE AFFECTED GPS UNITS CAN OVERHEAT.

**Consequence :** SUZUKI WILL NOTIFY OWNERS AND THE REPAIRS WILL BE PERFORMED BY GARMIN TECHNICIANS BY REPLACING THE BATTERY AND INSERTING A SPACER ON TOP OF THE BATTERY FREE OF CHARGE. THE SAFETY RECALL IS EXPECTED TO BEGIN DURING SEPTEMBER 2010. OWNERS MAY CONTACT GARMIN DIRECTLY AT 1-866-957-1981 OR SUZUKI AT 1-887-697-8985. OWNERS MAY ALSO VISIT GARMIN'S WEBSITE AT WWW.GARMIN.COM/ NUVIBATTERYPCBRECALL.

**Remedy :** SUZUKI'S RECALL CAMPAIGN NUMBER IS SJ. OWNERS MAY ALSO CONTACT THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION'S VEHICLE SAFETY HOTLINE AT 1-888-327-4236 (TTY 1-800-424-9153), OR GO TO HTTP://WWW.SAFERCAR.GOV .

---

**NHTSA Campaign ID :** 10V513000

**Mfg's Report Date :** OCT 18, 2010

**Component :** VISIBILITY:REARVIEW MIRRORS/DEVICES:EXTERIOR

**Potential Number Of Units Affected :** 69587

**Summary :** SUZUKI IS RECALLING CERTAIN MODEL YEAR 2007 SX4 HATCHBACK AND MODEL YEAR 2008-2010 SX4 HATCHBACK AND SEDAN PASSENGER VEHICLES. THE THREE SCREWS THAT SECURE EACH OF THE OUTSIDE REAR VIEW MIRRORS TO THE MIRROR BASE CAN COME LOOSE DUE TO VIBRATION.

**Consequence :** IF A REAR VIEW MIRROR FALLS OFF THE VEHICLE THE DRIVER WILL HAVE REDUCED VISIBILITY INCREASING THE RISK OF A CRASH.

**Remedy :** DEALERS WILL REPLACE THE BASE SCREWS ON BOTH OUTER REAR VIEW MIRRORS FREE OF CHARGE. THE MANUFACTURER HAS NOT YET PROVIDED AN OWNER NOTIFICATION SCHEDULE. OWNERS MAY CONTACT SUZUKI AT 1-887-697-8985 OR VISIT SUZUKI'S WEBSITE AT HTTP:// WWW.SUZUKIAUTO.COM.

**Notes :** SUZUKI SAFETY RECALL NO. SK. OWNERS MAY ALSO CONTACT THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION'S VEHICLE SAFETY HOTLINE AT 1-888-327-4236 (TTY 1-800-424-9153), OR GO TO HTTP:// WWW.SAFERCAR.GOV .

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# CCC▪ONE. MARKET VALUATION REPORT

# SUPPLEMENTAL INFORMATION

**NHTSA Campaign ID :** 13V405000

**Mfg's Report Date :** SEP 06, 2013

**Component :** AIR BAGS

**Potential Number Of Units Affected :** 193,936

**Summary :** Suzuki Motor of America, Inc. (Suzuki) is recalling certain model year 2006-2011 Grand Vitara and 2007-2011 SX4 vehicles. In the affected vehicles, over time, the OCS sensor mat installed in the front passenger seat may fail due to repeated flexing of the mat from use of the seat. As a result, during a crash necessitating deployment, the air bag will deploy regardless of whether the front seat occupant is an adult or a child.

**Consequence :** Air bag deployment with a child in the front passenger side seat increases the risk of injury to that child.

**Remedy :** Suzuki will notify owners and dealers will replace the front passenger seat cushion assembly (which includes the OCS sensor mat) free of charge. Sufficient quantities of parts are not currently available to fix all of the affected vehicles. Owners will be notified of the recall in October 2013 and will receive a second notification when parts are available to have their vehicle repaired. Owners may contact Suzuki at 1-800-934-0934. Suzuki's recall campaign number is VD.

**Notes :** Note: Vehicles which previously had a countermeasure occupant classification system (OCS) sensor mat installed under the special coverage campaign conducted by Suzuki distributors in the United States are not affected by this recall. Owners may also contact the National Highway Traffic Safety Administration's Vehicle Safety Hotline at 1-888-327-4236 (TTY: 1-800-424-9153), or go to www.safercar.gov.

© Copyright 2016 CCC Information Services Inc. All Rights Reserved.

# EXHIBIT C



CSAA General Insurance Company
P.O. Box 24610
Oakland, CA 94623



ⅼｌｌｌ‖ⅼ‖‖‖‖‖‖ⅼｌｌⅼ‖ⅼｌ

SANDRA SILER
1486 SULLIVAN TRL
TANNERSVILLE, PA 18372-7887

## YOUR CLAIM INFORMATION

| | |
|---|---|
| Claim number | 1002-37-7700 |
| Policy Number | PASS203871492 |
| Policyholder | Sandra Siler |
| Date of incident | November 02, 2017 |
| VIN | JS2YB417996200195 |

November 27, 2017

Dear Sandra Siler;

This letter confirms our recent settlement discussion about the incident involving the 2009 SUZUKI SX4.  Your settlement offer is $5,242.55.



Carol Foley
**925-279-2435**
Regular Claims Center hours are
Monday – Friday 8:00 AM – 7:00 PM,
Pacific Time

As we discussed, we have determined that your vehicle is a total loss.  A total loss generally means that the cost to repair your vehicle is close to or more than the market value of the vehicle.  Each state has a specific definition of total loss. We are settling your claim based on the vehicle's market value just before the loss. Market value represents the dollar amount you could expect to receive if you sold the vehicle in the marketplace prior to the incident.

Please review all of the documents and take note of any additional information we may need from you.  You can contact us at the phone number listed under Your Claim Information box to discuss  your settlement offer.

We value you as our customer and appreciate the opportunity to assist you.

Sincerely,

*Carol Foley* on behalf of *Carol Foley*

Carol Foley

Claims Representative

## What you need to do

Authorize vehicle's removal from its current location by 11/07/2017

Return rental vehicle by 11/20/2017

Sign documents necessary to transfer vehicle title or change title to salvaged (enclosed)

**Please turn the page** and on the back, you'll find the section listing "What's inside."

Please turn over ➜

# ▷ What's inside



| | |
|---|---|
| About your settlement | Your settlement |
| Documents needed to finalize settlement | Your rental vehicle reimbursement |
| Removing vehicle from the policy | How to submit documents |

## About your settlement

There are several items to understand about your settlement:

- To arrive at the actual cash value of your vehicle, we averaged retail pricing information from two (2) automobile pricing guides approved for use in your state. Copies of the documentation used to establish the actual cash value of your vehicle are enclosed.

- The market value of the vehicle is $5,417.50. This amount was used in determining your settlement.

- Based on the information we have already reviewed, the market value established for your vehicle represents a fair settlement for your vehicle.

- Until we finalize the settlement, you are still the owner of the vehicle.

- The vehicle had 128642 miles on the odometer when it was declared a total loss.

- We will cover the incurred storage fees related to the vehicle through 11/07/2017.



CSAA General Insurance Company
P.O. Box 5483
Mt. Laurel, NJ 08054

## Your settlement

The following is a breakdown of your settlement for this claim:

| | | |
|---|:---:|---:|
| Market value of vehicle | | $5,417.50 |
| **Net market value** | | **$5,417.50** |
| Local tax reimbursements | + | $325.05 |
| DMV fee reimbursement | + | $0.00 |
| **Gross Settlement Amount** | | **$5,742.55** |
| Less deductible | – | $500.00 |
| **Total settlement offer** | | **$5,242.55** |

This offer represents what AAA accepts as the amount owed to you. Depositing the settlement offer check or receiving an electronic funds transfer for the settlement offer amount means you accept the offer of payment for your vehicle, but does not constitute a release of the entire claim. Accepting this payment from AAA does not prevent you from pursuing any additional amount you believe you are entitled to.

## Documents needed to finalize settlement

Enclosed are the documents necessary to finalize payment of the settlement for your claim. These documents relate to your vehicle title, and **can only be returned in the postage paid envelope provided**. Please sign only in spaces marked with "Sign Here" indicators. It is not necessary for you to complete any other sections of the forms.

## Your rental vehicle reimbursement

Your policy provides rental vehicle reimbursement coverage. If you are currently using a rental vehicle, your policy will cover the vehicle for this incident through the end of the day on November 20, 2017. If you decide to keep the rental vehicle longer, you will need to make arrangements with the rental agency to cover additional costs.

## Removing vehicle from the policy

Once you have accepted the settlement offer, we will advise Insurance Customer Service to remove the total loss vehicle from your policy. The removal will occur within 30 days from the date your settlement is finalized, and will be back-dated to the day after the incident. If you purchase a replacement vehicle, you will need to contact your AAA agent or call Insurance Customer Service at Member Services Center at (800) 207-3618 within 30 days of the purchase to provide the new vehicle information and add the vehicle to your policy.

This page is intentionally left blank



P.O. Box 24610
Oakland, CA 94623

Phone   888.222.0086
Fax      877.548.1610

## IMPORTANT!

### *All Documents must be signed the same as the auto is registered!*

### *Please sign everything as*

**SANDRA J SILER**

## You MUST return:

# THE <u>UNSIGNED</u> ORIGINAL TITLE

AND ALL OTHER ATTACHED SETTLEMENT FORMS, SIGNED AS INDICATED, TO AAA WITHIN (3) DAYS OF THEIR RECEIPT BY YOU. A PREPAID RETURN ENVELOPE HAS BEEN PROVIDED FOR YOUR CONVENIENCE. PLEASE REMEMBER TO ALSO FORWARD ANY EXTRA SETS OF KEYS STILL IN YOUR POSSESSION. PAYMENT WILL BE FORWARDED UPON OUR RECEIPT OF THE UNSIGNED ORIGINAL TITLE AND CORRECTLY EXECUTED SETTLEMENT DOCUMENTS.

IF YOU HAVE MISPLACED THE TITLE OR ARE UNSURE AS TO HOW TO CORRECTLY COMPLETE ANY OF THE ATTACHED DOCUMENTS, PLEASE CONTACT AAA AT THE NUMBER LISTED BELOW PRIOR TO COMPLETING AND RETURNING THE DOCUMENTS. PROMPT RETURN OF THESE ITEMS, PROPERLY COMPLETED, WILL ALLOW AAA TO QUICKLY TRANSFER THE VEHICLE OUT OF YOUR NAME WITH THE DEPARTMENT OF MOTOR VEHICLES.

Carol Foley 925-279-2435 ext

THANK YOU

This page is intentionally left blank

# POWER OF ATTORNEY

**KNOW ALL MEN BY THESE PRESENT,**

That I have made, constituted and appointed, and by these presents do make, constitute and appoint CSAA Insurance Group, my true and lawful attorney for me and in my name, place and stead to execute any and all applications for or assignments of Certificate of Title for Motor Vehicle described below.

2009/SUZUKI/ SX4 _____ JS2YB417996200195 _____
(Year/Make/Model)                      (Vehicle Identification Number)    (State)

Giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever, requisite and necessary to be done, as fully to all intents and purposes as I might or could do if personally present.

In witness whereof, I have hereunto set my hands and seal this ____, day of _____, 20__.

X _____               X _____
Owner Signature                               Co-Owner Signature

Subscribed and sworn to me this ____, day of _____, 20___.

_____          My Commission Expires: _____
Notary Public

(Seal) _____

For your protection, Pennsylvania law requires the following to appear on this form: Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and payment of a fine of up to $15,000.

This page is intentionally left blank