# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA SILER, individually and on
behalf of all others similarly situated,

        Plaintiff,

    v.

CSAA GENERAL INSURANCE
COMPANY,

        Defendant.

Case No: 3:20-cv-00096-MEM

*Document Electronically Filed*

---

## DEFENDANT CSAA GENERAL INSURANCE COMPANY'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
## PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

---

Marc E. Wolin
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
P:  (973) 622-3333
*Attorneys for Defendant*
*CSAA General Insurance Company*

Of Counsel:
David J. D'Aloia
Krystal D. Riebesell

# TABLE OF CONTENTS

**Page**

I.  PRELIMINARY STATEMENT.........................................................................1

II.  PROCEDURAL HISTORY................................................................................3

III.  STATEMENT OF FACTS................................................................................3

IV.  STATEMENT OF THE QUESTION INVOLVED.......................................5

V.  LEGAL ARGUMENT.......................................................................................5

    A.  Standard of Review.................................................................................5

    B.  Plaintiff Fails to State a Claim for Breach of Contract.........................7

        1.  ACV Does Not Mean Replacement Value under the Policy...........................................................................................8

        2.  Plaintiff Has Not Alleged that She Actually Incurred Any Fees. ...................................................................................16

VI.  CONCLUSION...............................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

Bloxham v. Allstate Ins. Co.,
    2019 U.S. Dist. LEXIS 74139 (M.D. Pa., May 2, 2019)....................................17

Brown v. Everett Cash Mut. Ins. Co.,
    157 A.3d 958 (Pa. Super. Ct. 2017)............................................................11, 12

Coleman v. Garrison Prop. & Cas. Ins. Co.,
    2019 U.S. Dist. LEXIS 127940 (N.D. Ill., July 31, 2019) ...........................13, 14

Farber v. Perkiomen Mut. Ins. Co.,
    370 Pa. 480 (1952) ...............................................................................................10

Fedas v. Insurance Co. of the State of Pennsylvania,
    300 Pa. 555 (1930) ...............................................................................................10

Fowler v. UPMC Shadyside,
    578 F.3d 203 (3d Cir.2009) .............................................................................6, 19

Frey v. Grumbine's RV,
    2010 U.S. Dist. LEXIS 120659 (M.D. Pa. Nov. 15, 2010) ...............................17

Gillette v. Donahoe,
    2013 WL 2043149 (M.D.Pa. May 14, 2013).......................................................6

Jones v. GEICO Gen. Ins. Co.,
    2019 U.S. Dist. LEXIS 120353 (M.D. Fla., July 19, 2019) ........................14, 15

Kane v. State Farm Fire & Cas. Co.,
    841 A.2d 1038 (Pa. Super. 2003) .............................................................*passim*

Kurach v. Truck Ins. Exch.,
    2018 Pa. Super. Unpub. ................................................................................12, 19

London v. Insurance Placement Facility of Pennsylvania,
    703 A.2d 45 (Pa. Super. 1997) ...........................................................................10

Madison Const. Co. v. Harleysville Mut. Ins. Co.,
    557 Pa. 595 (1999)...........................................................................8

McTernan v. City of York,
    577 F.3d 521 (3d Cir.2009) ...........................................................6

Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of
    Malone Middleman, P.C.,
    635 Pa. 427 (Pa. 2016)..................................................................17

Pellegrino v. State Farm Fire & Cas. Co.,
    568 Fed. Appx. 129 (3d Cir. 2014)...............................................13

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,
    998 F.2d 1192 (3d Cir.1993) .........................................................6

Presbyterian Medical Center v. Budd,
    2003 PA Super 323 (Pa. Super. 2003)...........................................7

Roth v. GEICO Gen. Ins. Co.,
    2018 U.S. Dist. LEXIS 226554 (S.D. Fla., June 14, 2018)......14, 15

Sandow v. Calvert,
    2014 Pa. Dist. & Cnty. Dec. LEXIS 6061, *7-8 (Common Pleas
    Court of Allegheny County, May 16, 2014).................................17

Sands v. McCormick,
    502 F.3d 263 (3d Cir.2007) ...........................................................6

Sigler v. GEICO Cas. Co.,
    2019 U.S. Dist. LEXIS 82431 (C.D. Ill., May 15, 2019)....14, 17, 18, 19

U.S. Express Lines, Ltd. v. Higgins,
    281 F.3d 383 (3d Cir.2002) ...........................................................6

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)...............................................................1, 5, 20

Pennsylvania Rule of Civil Procedure 1018.1 ..........................................3

# I.  PRELIMINARY STATEMENT

Defendant CSAA General Insurance Company ("CSAA") respectfully submits this Brief in support of its Motion to Dismiss Plaintiff's Class Action Complaint (the "Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6), for failure to a state claim upon which relief can be granted.

In the Complaint, Plaintiff claims that CSAA breached its insurance policy by failing to pay for various title registration and regulatory fees as part of CSAA's calculation of actual cash value ("ACV") when it paid Plaintiff for the total loss of her insured vehicle following a motor vehicle accident in November 2017.  In support of her claim, Plaintiff contends that these are mandatory fees imposed by the Commonwealth of Pennsylvania that "must be paid to replace any vehicle."

Based on the express language of the CSAA policy, however, ACV does not mean replacement value.  To the contrary, CSAA limits its liability for first-party loss to a covered vehicle to the <u>lowest of</u> either the ACV of the "damaged property" itself <u>or</u> "the amount necessary to repair or replace the damaged property."  As confirmed by the Pennsylvania courts, if ACV had the same meaning as "replacement costs" in this context, as Plaintiff alleges, CSAA's policy language, which limits CSAA's liability to the lowest of either one or the other, would make no sense.  Accordingly, the various tag and title transfer fees sought

by Plaintiff are not part of the "actual cash value" of the "damaged property" itself, which is all CSAA was required to pay based on the language of its policy.

Cases around the country involving nearly identical allegations are also in full accord and demonstrate that an insurer's failure to pay the title and transfer fees that Plaintiff seeks from CSAA is not a breach of contract where the insurance policy at issue does not expressly provide for them or provide for the payment of replacement costs.

In addition, Plaintiff has not alleged that she actually incurred the various types of allegedly mandatory fees she seeks to recover, or that she ever asked CSAA to pay any of them in connection with her claim for coverage. Plaintiff is not entitled to a theoretical reimbursement under the CSAA policy and her contention that there was a breach of the policy lacks any factual support and is no more than a mere conclusion that is insufficient to support her breach of contract claim.

Plaintiff's breach of contract claim fails as a matter of law and therefore should be dismissed with prejudice. The Class Action Complaint should be dismissed in its entirety.

## II.  **PROCEDURAL HISTORY**

Plaintiff filed a Class Action Complaint in the Court of Common Pleas of Monroe County, Pennsylvania, docketed at case No. 10382 cv 2019, on December 17, 2019.  CSAA received a copy of the Complaint by certified mail on December 20, 2019.[1]  On January 17, 2020, CSAA removed this action to this Court.

## III.  **STATEMENT OF FACTS**

On November 2, 2017, Plaintiff was involved in an accident while operating her 2009 Suzuki SX4, VIN#JS2YB417996200195 (the "Insured Vehicle").  See Compl. at ¶ 13.  The Insured Vehicle was insured under an automobile insurance policy issued to Plaintiff by CSAA (the "Policy").  See Compl. at ¶ 12; Compl. at Exhibit A.

Pursuant to the Policy's Insuring Agreement for "Coverage for Damage to Your Auto," CSAA will pay for direct and accidental loss to a covered auto "including its permanently attached equipment, minus any applicable deductible shown in the Declarations."  See Compl. at ¶ 23; Compl. at Exhibit A at pg. 21. This Section further provides as follows:

> **A.**  Our limit of liability for loss will be the lowest of the:
>
> 1.  Actual cash value of the stolen or damaged property;

---

[1] Neither a Summons nor a Notice to Defend pursuant to Pennsylvania Rule of Civil Procedure 1018.1 was provided to CSAA.  See Notice of Removal (ECF No. 1).

2.     Amount necessary to repair or replace the property with other property of like kind and quality; or

3.     The limit of liability, if one is shown, in the Declarations.

See Compl. at ¶ 25; Compl. at Exhibit A at pg. 28.

Following the filing of a claim by Plaintiff in connection with her accident, CSAA determined that the Insured Vehicle was a total loss and made a settlement offer to Plaintiff in the amount of $5,242.55. See Compl. at Exhibit C. CSAA's settlement offer was "based on the vehicle's market value just before the loss." Id. In its settlement letter to Plaintiff, CSAA explained that "[m]arket value represents the dollar amount you could expect to receive if you sold the vehicle in the marketplace prior to the incident." Id. The letter further noted that to arrive at the ACV of the Insured Vehicle, CSAA "averaged retail pricing information from two (2) automobile pricing guides approved for use" in Pennsylvania. Id. After determining the market value, adding in sales tax (which is expressly provided for under the Policy)[2], and subtracting Plaintiff's deductible of $500.00, CSAA made a final settlement payment to Plaintiff of $5,242.55. See Compl. at ¶ 16.

In her Complaint, Plaintiff alleges that CSAA "breached its Insurance Policy with Plaintiff by failing to pay any amount for the title fee, title lien fee,

---

[2] The Policy provides that if CSAA elects to "pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property." Compl. at Exhibit A at pg. 28. In contrast, there is no mention anywhere in the Policy of any of the title or registration fees Plaintiff is seeking in the Complaint.

registration fee, county fee, Safety Inspection Sticker fee, or Emissions Inspection Sticker fee when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle." Compl. at ¶ 21. Notably, Plaintiff has not alleged that she ever actually paid any of these fees or sought reimbursement of any such amounts from CSAA in connection with her settlement.

Plaintiff further alleges that because CSAA "declines to include all such fees and costs in making ACV payment to total-loss insureds – specifically tag and title transfer fee amounts," CSAA "systematically underpaid not just Plaintiff but thousands of other putative class members ('Class Members') amounts Defendant owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage." See Compl. at ¶¶ 2, 30.

## IV. STATEMENT OF THE QUESTION INVOLVED

Whether Plaintiff's claim for breach of contract should be dismissed because CSAA had no duty under the Policy to pay Plaintiff for the fees that she seeks in the Complaint?

## V. LEGAL ARGUMENT

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. When presented with a motion to dismiss for failure to state a claim, the

Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).

"[M]ere conclusory statements will not do; 'a complaint must do more than allege the plaintiff's entitlement to relief.'" Gillette v. Donahoe, 2013 WL 2043149, at *3 (M.D.Pa. May 14, 2013) (quoting Fowler, 578 F.3d at 210). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" McTernan v. City of York, 577 F.3d 521, 530 (3d Cir.2009) (quoting Iqbal, 556 U.S. at 679).

On a motion to dismiss, Courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record. See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.1993) (citations omitted); see also Sands v. McCormick, 502 F.3d 263, 268 (3d Cir.2007). However, a "document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir.2002) (quoting In re Burlington Coat Factory, 114 F.3d 1410, 1426 (3d Cir.1997)).

A document is integral to the complaint when the allegations in the complaint are based on the document.  Here, Plaintiff's allegations are based upon, and specifically refer to, the Policy, CSAA's settlement letter dated November 27, 2017, and the Market Valuation Report obtained by CSAA, all of which are attached to the Complaint.  Thus, the Court may properly consider and rely upon these documents in deciding CSAA's Motion to Dismiss.

### B.  Plaintiff Fails to State a Claim for Breach of Contract

In her Complaint, Plaintiff claims that CSAA "breached its Insurance Policy with Plaintiff by failing to pay any amount for the title fee, title lien fee, registration fee, county fee, Safety Inspection Sticker fee, or Emissions Inspection Sticker fee when it paid Plaintiff what it purported to be the ACV associated with the total loss of the Insured Vehicle."  Compl. at ¶ 21.  Despite this conclusory claim, however, CSAA had no obligation under the Policy to pay Plaintiff for these fees.

To support a claim for breach of contract, "a plaintiff must plead: 1) the existence of a contract, including its essential terms; 2) a breach of a duty imposed by the contract; and 3) resultant damage."  Presbyterian Medical Center v. Budd, 2003 PA Super 323 (Pa. Super. 2003).  Here, where there has been no breach of a duty imposed by the Policy, Plaintiff has failed to support a claim for breach of contract.

### 1. ACV Does Not Mean Replacement Value under the Policy.

In interpreting the language of an insurance policy, "the goal is 'to ascertain the intent of the parties as manifested by the language of the written instrument.'" Madison Const. Co. v. Harleysville Mut. Ins. Co., 557 Pa. 595, 606 (1999). When construing a policy, "words of common usage…are to be construed in their natural, plain and ordinary sense," and where the language of the policy is clear and unambiguous, the court is required to give effect to that language. See id. at 606-608.

CSAA's policy language clearly and unambiguously provides that its limit of liability for coverage for damage to a covered auto is the lowest of either ACV of the "damaged property" or the amount "necessary to repair or replace the property with other property of like kind and quality." See Compl. at ¶ 25; Compl. at Exhibit A at pg. 28. Said simply, under the first option, CSAA pays for only the cost of the damaged auto itself, versus the second option under which CSAA pays replacement value. Applying this language as written, here, CSAA is only liable to pay Plaintiff for the ACV of the damaged property itself, because it is the "lowest of" the two options.

Critically, there is no reference anywhere in the policy language to the various title fees, title lien fees, registration fees, and other fees that Plaintiff

argues are recoverable under the Policy.[3]  Recognizing that she has no applicable policy language to rely on, Plaintiff instead argues that these are mandatory applicable fees which are covered under the Policy because they "must be paid to replace any vehicle in the Commonwealth of Pennsylvania."  See Compl. at ¶ 18 (emphasis added); see also Compl. at ¶ 20 ("such fees are incontrovertibly part of the costs to replace a total loss vehicle") (emphasis added).  This argument, however, ignores the plain language of the Policy which establishes that CSAA only pays replacement costs if they are lower than the ACV of the damaged property – and here, according to Plaintiff's own allegations, they were not.

Plaintiff's allegation that under Pennsylvania law "ACV has consistently been interpreted to mean repair or replacement costs less depreciation" (Compl. at ¶ 10) ignores the "intent of the parties as manifested by the language of the written instrument."  See Madison Const. Co., 557 at 606.  It also disregards Pennsylvania case law which makes clear that an insurer may clarify its coverage for ACV by using tailored policy language.

In Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038 (Pa. Super. 2003), a class action, the Superior Court of Pennsylvania examined the question of whether a number of insurers were permitted to withhold depreciation from a class of

_____

[3] Contrast the policy language on "**Payment of Loss**" which expressly provides that if CSAA pays for loss in money, that payment will include the applicable sales tax for the damaged property – which CSAA did include in its settlement payment to Plaintiff here.  See Compl. at Exhibit A at pg. 28; Compl. at Exhibit C.

homeowners policyholders' ACV payments.[4]  There, the court explained that the "core" of the dispute was the meaning of the phrase "actual cash value" – which was undefined in all of the policies at issue.  <u>Id.</u> at 1040.

The court began its analysis by summarizing Pennsylvania's extensive case law on the meaning of ACV which provides that "actual cash value [is] not the same as market value, which would incorporate depreciation, but rather was akin to replacement cost."  <u>Id.</u> at 1045 (citing <u>Fedas v. Insurance Co. of the State of Pennsylvania</u>, 300 Pa. 555 (1930)).  <u>See</u> <u>also</u> <u>Farber v. Perkiomen Mut. Ins. Co.</u>, 370 Pa. 480, 486-87 (1952) (reiterating that an insured was entitled to "full replacement cost" in the absence of a change by the insurers to their policies).

The court then explained, however, that "although <u>Fedas</u> and <u>Farber,</u> <u>supra</u> remain viable, explicit policy language may avoid their effects."  <u>Kane</u> at 1047.  <u>See</u> <u>London v. Insurance Placement Facility of Pennsylvania</u>, 703 A.2d 45 (Pa. Super. 1997) (explaining that the Pennsylvania Supreme Court has made clear that insurers can tailor their policies and clarify their coverage for ACV with explicit policy language).  The <u>Kane</u> court explained that "where qualifying language is absent" and an insured is promised ACV, the insured is entitled to the cost to repair or replace the damaged property.  <u>Kane</u> at 1047.  However, where an insurer has

---

[4] Although <u>Kane</u> and certain other cases cited herein deal with homeowners insurance policies, the courts' evaluations of the meaning of "actual cash value" and the difference between ACV and "replacement costs" are instructive and applicable to the instant matter.

tailored its policies to clarify the extent of the intended coverage, the policy language controls.  See id.

Turning to the language of the insurance policies at issue there, the court in Kane explained that each of the policies had "qualifying language indicating that 'actual cash value' will be the proffered compensation where the insured does not repair or replace the damage."  Id. at 1049 (emphasis added).  Given this language, the court held that ACV could not mean replacement value "as such interpretation would make the remaining policy language nonsensical."  Id.  Thus, the court held that "actual cash value cannot also mean replacement value."  Id.

Similarly, because CSAA's policy language expressly distinguishes between ACV of the damaged property and the amount "necessary to repair or replace the property," and provides that CSAA will pay "the lowest of" the two, ACV and replacement value cannot mean the same thing here.

In Brown v. Everett Cash Mut. Ins. Co., 157 A.3d 958 (Pa. Super. Ct. 2017), the Superior Court of Pennsylvania again recognized the difference between ACV and "replacement value" based on the express wording of the insurance policy at issue.  There, the insureds asserted they were entitled to "full replacement value, not just actual cash value" under their homeowners policy where the policy provided that when the cost to repair or replace exceeds the lesser of $2,500 or 5% of the limit, "we do not pay for more than actual cash value of the loss until repair

or replacement is completed." Id. at 963. Because the express terms of the policy only obligated the insurer to pay more than ACV if they repaired or replaced the residence, the insureds were not entitled to the "full replacement cost." Id. Relying on Kane, the court explained that where the policy "clearly and explicitly set forth the procedure for recovering replacement costs," the insurer was "well within its right to offer only actual cash value of the demised premises according to the express language of the policy." Id. at 964. The court thus held that the insurer "did not breach the insurance policy by paying [the insureds] the actual cash value, rather than the replacement value of the residence." Id. Like Kane, this precedent is directly applicable to the CSAA Policy.

In Kurach v. Truck Ins. Exch., 2018 Pa. Super. Unpub. LEXIS 3099, 195 A.3d 1024 (Pa. Super. 2018), the parties disputed the issue of whether general contractor overhead and profit ("GCOP") should have been included in the calculation of an ACV settlement. There, the homeowners policy at issue expressly provided that ACV settlements would not include GCOP unless and until those fees and charges were incurred, unless the law of the state required the payment of GCOP with the ACV settlement. See id. at *8-9. Relying on Kane, the court held that "the definitions supplied by case law in Pennsylvania demonstrate the parties' intent only where the policy does not explicitly provide for a different outcome," and there, the policy "clearly and obviously provides that

GCOP will not be paid to an insured until the insured actually incurs that cost." Id. at *11. See also Pellegrino v. State Farm Fire & Cas. Co., 568 Fed. Appx. 129 (3d Cir. 2014) (applying Pennsylvania law and rejecting insureds' claim that insurer was obligated to pay them the cost of a full roof and siding replacement as part of an ACV payment).

Although it is an out-of-state case, Coleman v. Garrison Prop. & Cas. Ins. Co., 2019 U.S. Dist. LEXIS 127940 (N.D. Ill., July 31, 2019), is also instructive as it involves identical allegations to those which Plaintiff has made here and has a result which aligns with Pennsylvania law that the specific language of the insurance policy at issue must control. In Coleman, the plaintiff alleged that an insurer's failure to include the costs of title transfer fees in a total loss reimbursement settlement constituted a breach of the plaintiff's insurance agreement. There, the policy at issue did not actually require the insurer to pay ACV for a total loss: ACV was the limit of liability, not the amount the insurer promised to pay. See id. at *5-6. Notwithstanding this, the court explained that even if the insurer *was* obligated to pay ACV, the plaintiff's argument that "actual cash value" necessarily included Illinois' mandatory title transfer fees did not "hold water." See id. at *7.

In <u>Coleman</u>, the policy defined ACV as "the amount it would cost, at the time of loss, to <u>buy</u> a comparable vehicle." <u>See</u> <u>id.</u> at *7-8. The court explained that this was not the same thing as replacement cost:

> Plaintiff alleges that sales tax and title transfer fees are "necessary and mandatory" in Illinois, and argues they are included in her "vehicle replacement costs" – in other words, they are costs she incurs in order to replace her vehicle. But the policy does not define "actual cash value" as the amount it would cost Plaintiff to "replace" her vehicle – i.e., to buy a comparable vehicle…Instead, the policy defines "actual cash value" as "the amount it cost, at the time of loss, to buy" – not replace – "a comparable vehicle."…The definition is thus limited to the purchase price of the vehicle itself and does not include attendant "replacement costs" like sales tax, title fees, registration fees, or the like. Nothing in the plain language of the policy provisions Plaintiff cites as the basis for her claims can reasonably be construed as an express promise to pay sales tax and title fees, and Plaintiff does not point to any other provisions in the policy that Defendants breached.

<u>Id.</u> at *7-8. <u>See also</u> <u>Sigler v. GEICO Cas. Co.</u>, 2019 U.S. Dist. LEXIS 82431 (C.D. Ill., May 15, 2019) (discussed in detail in Section B.2 below).

Moreover, in the out-of-state cases where courts have held that title transfer fees *are* considered to be a component of ACV, the policies at issue (unlike the CSAA Policy here) expressly defined "actual cash value" as "the replacement cost of the auto" or "insured vehicle." <u>See</u> <u>Jones v. GEICO Gen. Ins. Co.</u>, 2019 U.S. Dist. LEXIS 120353 at *1 (M.D. Fla., July 19, 2019); <u>Roth v. GEICO Gen. Ins. Co.</u>, 2018 U.S. Dist. LEXIS 226554 at *8 (S.D. Fla., June 14, 2018). In both of these cases, the courts' decisions were based on 11th Circuit case law finding that "replacement cost includes items such as a contractor's overhead and profit, sales

tax, and fees where it is 'reasonably likely' that the insured would incur these costs if he or she repaired or replaced the property." <u>Jones</u> at *8. <u>See</u> <u>also</u> <u>Roth</u> at *10 ("settled law in the Eleventh Circuit…is that when an insurer provides an actual cash value insurance policy covering the cost to repair or replace damaged insured property, it must pay all of the costs that are included in the cost of replacement…").

Here, as detailed above, Plaintiff's Policy states that CSAA's limit of liability for first-party loss to a covered auto will be "the lowest of": (1) the ACV of the "damaged property"; (2) the amount "necessary to repair or replace the property with other property of like kind and quality"; or (3) the limit of liability. <u>See</u> Compl. at Exhibit A at p. 28. Said simply, the Policy pays the lowest of <u>either</u> the ACV of the damaged property itself <u>or</u> the replacement value. As in <u>Kane</u> (and the other Pennsylvania cases that follow), given the Policy's qualifying language, it is clear that ACV of the damaged property *cannot* mean the amount necessary to replace the property as this would render the express language of the Policy "nonsensical." <u>See</u> <u>Kane</u> at 1049.

As detailed in CSAA's settlement offer letter (attached to the Complaint at Exhibit C), CSAA opted to settle Plaintiff's claim for the ACV of the total loss vehicle, which was "based on the vehicle's market value just before the loss" – as it was clearly entitled to do under the policy language. <u>See</u> Compl. at Exhibit C.

CSAA explained that "[m]arket value represents the dollar amount you could expect to receive if you sold the vehicle in the marketplace prior to the incident" – which does not include registration and title fees. <u>Id.</u> The letter further noted that to arrive at the ACV of the Insured Vehicle, CSAA "averaged retail pricing information from two (2) automobile pricing guides approved for use" in Pennsylvania. <u>Id.</u> Because CSAA's offer and payment to Plaintiff in settlement of her claim was based upon the ACV of the Insured Vehicle (i.e. the value of the damaged property itself), and <u>not</u> the amount necessary to repair or replace the damaged property, CSAA is not responsible for the ancillary title transfer or tag transfer fees that Plaintiff is seeking in the Complaint – even accepting as true Plaintiff's allegation that these fees are "incontrovertibly part of the costs to <u>replace</u> a total loss vehicle." <u>See</u> Compl. at ¶ 18 (emphasis added). Therefore, Plaintiff cannot allege that CSAA breached any duty it owed under the Policy and the Complaint should be dismissed as a matter of law.

### 2. Plaintiff Has Not Alleged that She Actually Incurred Any Fees.

Notwithstanding the fact that CSAA has no duty under the Policy to pay for title registration and regulatory fees as part of ACV, Plaintiff has not even alleged that she actually incurred any of the fees that she seeks in her Complaint.

To plead a breach of contract claim under Pennsylvania law, the plaintiff must allege "(1) the existence of a contract, including its essential terms; (2) a

breach of the contract; and, (3) resulting damages." Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 635 Pa. 427 (Pa. 2016). "As a matter of law, there can be no breach of contract" where "there is no further duty or obligation under the [agreement] for [a party] to fulfill." Sandow v. Calvert, 2014 Pa. Dist. & Cnty. Dec. LEXIS 6061, *7-8 (Common Pleas Court of Allegheny County, May 16, 2014). See Frey v. Grumbine's RV, 2010 U.S. Dist. LEXIS 120659, *14 (M.D. Pa. Nov. 15, 2010) (granting motion to dismiss a breach of contract claim without further leave to amend where plaintiff failed to allege facts raising the inference that a contract existed and therefore could not meet one of the most basic elements of a breach of contract claim); see also Bloxham v. Allstate Ins. Co., 2019 U.S. Dist. LEXIS 74139 (M.D. Pa., May 2, 2019) (where the plaintiffs failed to allege that they were residents at the insured property, they "failed to plead that Defendant breached a contractual duty when it denied the insurance claim for fire damage" and failed to state a breach of contract claim).

Sigler v. GEICO Cas. Co. is another recent case filed in the Central District of Illinois which involved nearly identical allegations as those being made by Plaintiff here. See 2019 U.S. Dist. LEXIS 82431 (C.D. Ill., May 15, 2019). In Sigler, the named plaintiff alleged (on behalf of himself and two defined classes of plaintiffs) a breach of contract on the grounds that the defendant insurers "failed to

pay the costs of sales tax, title transfer fees, and tag transfer fees, despite being contractually obligated to do so."[5] Id. at *1-2. In response, the defendant insurers argued there was no breach of contract "because the obligation the Plaintiff alleges was breached never arose."

There, the court agreed with the defendant insurers and pointed out that the plaintiff did not assert that he had actually incurred sales tax, title transfer fees, or tag transfer fees or expenses. Id. at *7-8. The court rejected the plaintiff's claim that the language of the policies at issue entitled him and the articulated classes to such costs "without having to incur them." Id. at *8. To the contrary, the court explained:

> Nothing in the plain language of the policy can reasonably be construed as an express promise to insureds that they will be reimbursed for sales tax, title transfer fees, and tag transfer fees without first incurring such costs. The Plaintiff is clearly entitled to the actual cash value of his vehicle. The fact that actual cash value is defined, in part, as "the replacement cost" in the policy, does not entitle him to a theoretical reimbursement. The claim is simply too speculative…
>
> The Defendants determined that the Plaintiff's vehicle was a total loss and issued him a check for a calculated base value, minus his deductible. They did not pay the costs of sales tax, title transfer fees, or tag transfer fees. There is an inherent logic behind their alleged inaction. Nothing in the record suggests the Plaintiff informed the Defendants that he was entitled to a reimbursement for such costs.

---

[5] We note that unlike the CSAA Policy here, the GEICO policies at issue in Sigler defined ACV as "the replacement cost of the auto or property less depreciation or betterment." See Sigler at *2.

Id. at *8-9.  Because of this, the court held that the plaintiff's claim for breach of the insurance policy was a "mere conclusion" which was "insufficient to support his claim," and the defendant insurers' motion to dismiss was granted.  Id. at *9-10.  See also Kurach at *11 (plaintiffs "are not entitled to receive a payment for GCOP from [insurer] until they incur that cost").

Likewise, here, Plaintiff has failed to assert that she actually incurred any of the state and local fees and costs she is requesting reimbursement for in the Complaint, or that she ever informed CSAA that she was entitled to them prior to filing suit.  Plaintiff simply states that these are fees that Pennsylvania imposes and concludes that they must, therefore, be included in ACV.  As in Sigler, Plaintiff is not entitled to a "theoretical reimbursement" of these costs absent any express language in the Policy, and her mere conclusion that there was a breach of contract is insufficient to support that claim.  See Fowler, 578 F.3d at 210 ("a complaint must do more than allege the plaintiff's entitlement to relief").  Therefore, Plaintiff's Complaint should be dismissed.

## VI.    CONCLUSION

For all of the foregoing reasons, CSAA respectfully requests that this Court enter an order, pursuant to Fed.R.Civ.P. 12(b)(6), dismissing Plaintiff's Complaint in its entirety.

Respectfully submitted,
**SAIBER LLC**


 /s/ Marc E. Wolin
Marc E. Wolin, Esq. (Pa. # 65437)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
***Attorneys for Defendant***
*CSAA General Insurance Company*


Dated:  February 19, 2020

## <u>CERTIFICATE OF COMPLIANCE WITH M.D.Pa. LOCAL RULE 7.8(b)</u>

I, Marc E. Wolin, Esq., hereby certify as follows:

1.    Pursuant to Local Rule 7.8(b)(2) for the United States District Court for the Middle District of Pennsylvania, this brief complies with the word-count limitation of M.D.Pa. Local Rule 7.8(b)(2) because this brief contains 4815 words (including body of the brief and footnotes, but excluding tables and certificates), in a proportionally spaced typeface (Times New Roman) 14-point size.    This calculation sum was provided by the Microsoft Word processing system word count function.

I certify that the foregoing statements made by me are true.  I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

**SAIBER LLC**

 /s/ Marc E. Wolin
Marc E. Wolin, Esq. (Pa. # 65437)
**SAIBER LLC**
18 Columbia Turnpike, Suite 200
Florham Park, New Jersey 07932
***Attorneys for Defendant***
*CSAA General Insurance Company*

Dated:  February 19, 2020