# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA SILER, individually and on
behalf of all others similarly situated,

**Case No: 3:20-cv-00096-MEM**
**(Judge Malachy E. Mannion)**

    *Plaintiff,*

vs.

*Document Filed Electronically*

CSAA GENERAL INSURANCE COMPANY,
an Indiana Corporation,

    *Defendant.*

_____/

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ……………….…………….…………….……...….….…..6

I.    COUNTER STATEMENT OF FACTS…………….…………….…………..7

II.   COUNTER STATEMENT OF QUESTION INVOLVED ………………….9

III.  ARGUMENT ………………………………………….…….……….9

    A.  The ACV of a Total Loss Vehicle Includes Transfer Fees…………..……...10

       i.  ACV Means "Replacement Cost Less Depreciation" and Includes Costs "Reasonably Expected to Be Incurred"…………………….………..…10

      ii.  Transfer Fees Are Necessary to Replace Total-Loss Vehicles ………....13

     iii.  Defendant's "Disjunctive" Argument is a Red Herring...……………..14

     iv.  Plaintiff's Interpretation Is Reasonable, At Minimum…………………18

    B.  ACV is Not Contingent on Whether an Insured Actually Replaces the Vehicle. …………………………………………...…………19

    C.  At Minimum, Dismissal Is Precluded at This Stage of the Litigation………..22

    CONCLUSION………………………………………………..………...…24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*4th St. Investors LLC v. Dowdell*, 2007 U.S. Dist. LEXIS 99670 (W.D. Pa. Dec. 3, 2007) ..........................................................................13

*Albert v. Nationwide Mut. Fire Ins. Co.*, 2001 U.S. Dist. LEXIS 16435 (M.D. Pa. May 22, 2001). .................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) ...........................................9

*Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1291 (M.D. Fla. 2015) ................................................................................21

*Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013) ......................22

*Canulli v. Allstate Ins. Co.*, 315 Pa. Super. 460 (Pa. Super. Ct. 1983) ................10

*Compagnie Des Bauxites De Guinee v. Three Rivers Ins. Co.*, 2007 U.S. Dist. LEXIS 41539 (W.D. Pa. Jun. 7, 2007) ....................................18

*Davis v. Geico Cas. Co.*, 2020 U.S. Dist. LEXIS 2071 (S.D. Oh. Jan. 7, 2020) ........................................................................................17

*Farber v. Perkiomen Mut. Ins. Co.*, 88 A.2d 776 (1952), ......................12

*Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 363-64 (1930) .........................................................................10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d. Cir. 2009) ....................9

*Frain v. Keystone Ins. Co.*, 640 A.2d 1352 (Pa. Super. Ct. 1994) ........23

*General Refractories Co. v. Fed. Ins. Co.*, 2001 U.S. Dist. LEXIS 20406 (E.D. Pa. Dec. 6, 2001) ..........................................................19

*Ghoman v. New Hampshire Ins. Co.*, 159 F. Supp. 2d 928 (N.D. Tex. 2001) (same). ...............................................................................20

3

*Gilderman v. State Farm Ins. Co.*, 437 Pa. Super. 217 (Pa. Super. 1994) ...................................................................................................10, 19

*Guardian Life Ins. Co. of America v. Zerance*, 505 Pa. 345 (1984).....................11

*Humphreys v. Budget Rent a Car Sys.*, 2017 U.S. Dist. LEXIS 208600 (E.D. Pa. Dec. 19, 2017) .....................................................................11

*Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 120353 (M.D. Fla. Jul. 19, 2019) ..........................................................................16

*Kane v. State Farm Fire & Cas. Co.*, 841 A.2d 1038 (Pa. Super. 2003)). ......................................................................................................15

*Kurach v. Truck Ins. Exch.*, 2018 Pa. Super. Unpub. LEXIS 3099 (Pa. Super. Aug. 24, 2018). ...............................................................20, 21

*London v. Insurance Placement Facility*, 703 A.2d 45 (Pa. Super. Ct. 1997) ...............................................................................................14

*McTernan v. City of York,* 577 F.3d 521 (3d Cir.2009) .........................................9

*Md. Cas. Co. v. Express Prods.*, 2011 U.S. Dist. LEXIS 108048 (M.D. Pa. Sep. 22, 2011) .............................................................................23

*Mee v. Safeco Ins. Co. of Am.*, 2006 PA Super 257 (Pa. Super. Ct. 2006) ......................................................................................................11, 13

*Mills v. Foremost Ins. Co.*, 511 F.3d 1300 (11th Cir. 2008) ...............................20

*Ostendorf v. Grange Indem. Ins. Co.*, 2020 U.S. Dist. LEXIS 5163 (S.D. Oh. Jan. 13, 2020) ......................................................................16

*Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746 (W.D. Pa. 2015) ...........................................................................................10

*Parkway Associates, LLC v. Harleysville Mutual Ins. Co.*, 129 Fed. Appx. 955 (6th Cir. 2005)........................................................................20

*Redevelopment Authority of Cambria Cty. v. International Insurance Co.*, 454 Pa. Super. 374, 685 A.2d 581 (1996)...................................18

*Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226554 (S.D. Fla. Jun. 13, 2018)................................................................................16

*Sigler v. GEICO Cas. Co.*, 2019 U.S. Dist. LEXIS 82431 (C.D. Ill., May 15, 2019)........................................................................................21

## STATUTES

Illinois Admin. Code, Title 50, § 919.80(c)(3)(A)(i). ...........................................21

## TREATISES

*Couch On Insurance* 3d, § 176:4 ...........................................................14

*New Appelman On Insurance Law Library Edition* ...............................................14

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Plaintiff Sandra Siler, through undersigned counsel, hereby files her Response in Opposition to the Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [DE #7] and Supporting Brief [DE # 7-1] ("Motion") filed by Defendant CSAA General Insurance Company on February 19, 2020 and states:

### Introduction

Virtually the entirety of Defendant's argument – pages 8-16 – is premised on the assertion, as set forth in the argument's header, that "ACV does not mean Replacement Value under the Policy." That is unquestionably true – instead, under clear Pennsylvania law, ACV means replacement cost less depreciation. Defendant accounted for and reduced payment for depreciation and condition, and Plaintiff does not claim such actions breached the contract *precisely because Plaintiff is not seeking full "Replacement Value."* Instead, Plaintiff is seeking that to which Pennsylvania law and the Policy are clear she is entitled – payment of replacement cost less depreciation. Thus, the fundamental argument advanced in Defendant's Motion is nothing more than a strawman.

Defendant also makes verifiably false statements concerning the cases it cites; for example, Defendant attempts to distinguish the cases asserting insureds are entitled to mandatory Transfer Fees – precisely what Plaintiff claims here – by claiming the policies at issue in those cases were full "replacement value" policies.

This is simply untrue. Instead, the policies were "replacement cost less depreciation" policies, exactly like Defendant's. Defendant cannot avoid that (1) ACV means replacement cost less depreciation; (2) a cost qualifies as an ACV "replacement cost" if it is necessary to replace the property at issue; and (3) the fees Plaintiff seeks are mandatory, unavoidable costs necessary to replace the total loss vehicle. There is no question Plaintiff has plausibly alleged a claim for breach of contract under black-letter Pennsylvania law, and thus Defendant's Motion should be denied.

## I.  <u>COUNTER STATEMENT OF FACTS</u>

On or about November 2, 2017, Plaintiff was involved in an accident while driving a vehicle insured by Defendant under an automobile insurance policy issued to Plaintiff for private passenger automobile coverage ("Policy"), and which included coverage requiring payment of "Actual Cash Value" ("ACV") in cases of a total loss – which equates to the cost to replace the vehicle, including mandatory state and local fees. *See* Complaint at ¶ 1.

Under the Policy and applicable state law, ACV is defined to mean replacement costs less depreciation, which includes title fees, registration fees, and inspection fees ("Mandatory Fees"), each of which are mandatory fees imposed by the Commonwealth of Pennsylvania on every vehicle transaction. Such fees, in other words, are mandatory applicable fees that must be paid to replace any vehicle in the

Commonwealth, which is precisely why many insurers, but not Defendant, pay such fees under essentially identical policies.

Vehicles must be legally titled, registered, and inspected in order to be used and operated in Pennsylvania, and the state, in turn, imposes fees on such transactions, including a title fee of $55.00, a title lien fee of $26.00 (if a lien is recorded with the transfer of title), a passenger vehicle registration transfer fee of $9.00, county fees of up to $5.00, a state inspection fee of $8.00, and a state emissions fee of $1.57. As mandatory, unavoidable loss-related expenditures, such fees are incontrovertibly part of the costs to replace a total loss vehicle. Nevertheless, Defendant, after determining Plaintiff's vehicle was a total loss, did not include Mandatory Fees in its claim payment. *See* Market Valuation Report, attached to Complaint as Exh. B and filed as an attachment to Defendant's Notice of Removal [DE 1-1] on 1/17/2020; Settlement Breakdown, attached to Complaint as Exh. C and filed as an attachment to Defendant's Notice of Removal [DE 1-1] on 1/17/2020.

Under the Policy, Defendant promises to "pay for direct and accidental loss to 'your covered auto'". *See* Policy at 21, attached to Complaint as Exh. A and filed as attachment to Defendant's Notice of Removal [DE 1-1] on 1/17/2020. However, Defendant limits its liability for loss to, *inter alia*, the ACV of the vehicle. *Id.* at 28. The Policy further asserts that ACV takes into account depreciation and condition of the vehicle. *Id*. This is consistent with Pennsylvania

law, which also defines ACV as replacement cost minus depreciation, which includes sales tax and Mandatory Fees necessarily incurred upon replacement of a vehicle. The Policy does not exclude Mandatory Fees nor contain any provision deferring or conditioning payment thereof.

## II. <u>COUNTER STATEMENT OF THE QUESTION INVOLVED</u>

Whether the allegations of the Complaint, taken as true, are sufficient to show that Plaintiff has a plausible claim for breach of contract, where Defendant promised to pay ACV, which is replacement cost less depreciation and adjusted for condition, and where Defendant did not pay Mandatory Fees that Plaintiff alleges are, at minimum, reasonably necessary to replace her total-loss vehicle.

## III. <u>ARGUMENT</u>

When presented with a motion to dismiss for failure to state a claim, the Court "must accept all of the complaint's well-pleaded facts as true," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d. Cir. 2009) and determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009) (quoting *Iqbal,* 556 U.S. at 679) (internal citations omitted).

Here, the Complaint sufficiently alleges plausible claims for breach of contract. The Motion to Dismiss should be denied because, when accepting Plaintiff's allegations as true, the Complaint contains sufficient factual matter to state a claim that is plausible on its face.

## A. The ACV of a Total-Loss Vehicle Includes Transfer Fees

Pennsylvania law concerning ACV is well-established: (1) unless otherwise set forth in a policy, ACV means and is measured as "replacement cost less depreciation", (2) such replacement cost includes costs necessary to replace the damaged property, and (3) if insurers want to avoid such obligation, they must explicitly do so in their policies. Defendant's Policy comports almost exactly with this default, common-law standard for ACV – the only modification is that Defendant wanted to take pre-loss condition into account, and thus explicitly said so in the Policy. Because the Mandatory Fees at issue are unavoidable and unquestionably necessary to replace a vehicle in Pennsylvania, they are clearly encompassed within the Policy's promise to pay ACV in the event of a total loss.

### i. ACV Means "Replacement Cost Less Depreciation" and Includes Costs "Reasonably Expected to Be Incurred"

In Pennsylvania, the uncontroverted law is that ACV, unless otherwise defined in the Policy, means "replacement cost" less depreciation. *See, e.g.*, *Gilderman v. State Farm Ins. Co.*, 437 Pa. Super. 217, 221 (Pa. Super. 1994) (when "not defined in [a] policy… [ACV] consistently has been interpreted as meaning 'the

actual cost of repair or replacement less depreciation.'") (citation omitted); *Fedas v. Insurance Company of the State of Pennsylvania*, 300 Pa. 555, 363-64 (1930) ("To sum up, [ACV] means the actual value expressed in terms of money of the thing for the purpose for which it was used, -- in other words, the real value to replace."); *Canulli v. Allstate Ins. Co.*, 315 Pa. Super. 460, 462 (Pa. Super. Ct. 1983) ("[ACV] is the actual cost of repair or replacement less depreciation."); *Papurello v. State Farm Fire & Cas. Co.*, 144 F. Supp. 3d 746, 768 (W.D. Pa. 2015) ("The court concludes, therefore…that '[ACV] at the time of the loss' equates to replacement cost less an amount reflecting [depreciation].").

Further, such ACV amount includes any costs an insured "reasonably *would be expected to incur* in repairing or replacing the covered loss." *Gilderman*, 437 Pa. Super. at 225. As the *Gilderman* court explained in the context of the cost specifically at issue in that case (general contractor overhead and profit or GCOP), some types of damage require utilization of a general contractor, and some do not. Whether GCOP is a part of ACV, then, depends on whether the damage is the type for which a general contractor would reasonably be expected. *Id.*; *see also Mee v. Safeco Ins. Co. of Am.*, 2006 PA Super 257, at *16 (Pa. Super. Ct. 2006) (insured entitled to costs under ACV policy if such costs "would be reasonably likely").

Defendant appears to argue ACV means solely "market value." Motion at 15-16 (arguing Defendant paid the "market value" of the vehicle, as permitted by the

Policy). But the Policy says nothing about market value – Defendant is attempting to re-write its own Policy to insert "market value", which Pennsylvania law prohibits. *See Guardian Life Ins. Co. of America v. Zerance*, 505 Pa. 345, 353, (1984) (courts cannot re-write insurance policies). Moreover, courts have explicitly held that ACV *does not* mean market value. *See Fedas*, 300 Pa. at 562 ("Generally speaking, [ACV] does not mean market value…"); *see also Humphreys v. Budget Rent a Car Sys.*, 2017 U.S. Dist. LEXIS 208600, at *20 (E.D. Pa. Dec. 19, 2017) (noting that the Pennsylvania Supreme Court has "clearly distinguished" between ACV and market value). Defendant invites this Court to commit error by ignoring binding precedent. If Defendant wanted to define ACV as market value, it should have done so, rather than asking this Court to retroactively re-write the Policy in a manner at odds with its actual text and Pennsylvania law. Defendant asserted ACV would include adjustment for depreciation, which *confirms* Pennsylvania law that ACV means "replacement cost less depreciation."

Instructive on this point is *Farber v. Perkiomen Mut. Ins. Co.*, 88 A.2d 776 (1952), which held that ACV obligates insurers to pay *full* replacement cost (without even a deduction for depreciation).[1] The Court explained that if insurers were

---

[1] The only arguably muddled aspect of Pennsylvania law is whether, if undefined, ACV requires payment of full replacement cost (without consideration of depreciation) or whether it requires payment of replacement cost less depreciation. *Compare Gilderman*, 437 Pa. Super. at 221 (ACV is replacement cost less depreciation) *and Kane*, 841 A.2d at 1047-49 (default ACV definition does not

unhappy with such an obligation, they could simply change their policies. *Id.* at 779

("The defendant companies prepare their own policy forms and presumably exclude

therefrom anything for which they desire not to assume liability… Any change in

the defendants' policies in order to avoid in the future the impact of our prior

decisions is for them to ponder."). Defendant did precisely that by refining ACV to

include adjustments for depreciation and condition *but not by excluding replacement*

*costs altogether*, which is particularly important given "defendant companies

prepare their own policy forms and presumably exclude therefrom anything for

which they desire not to assume liability." *Id.*[2]

### ii. Transfer Fees Are Necessary to Replace Total-Loss Vehicles

Plaintiff alleges that to operate a vehicle in Pennsylvania, it must be legally

titled, registered, and inspected. *See* Complaint at ¶10. Pennsylvania, in turn,

imposes fees in connection with these transactions, including a title fee of $55.00, a

---

permit deduction for depreciation). Here, however, the debate is irrelevant, because
Defendant made clear it would deduct for depreciation. *See also Albert v.
Nationwide Mut. Fire Ins. Co.*, 2001 U.S. Dist. LEXIS 16435, at *11-14 (M.D. Pa.
May 22, 2001).

[2] This point also contradicts Defendant's argument that because "there is no
reference" to Mandatory Fees in the Policy, this Court should construe this supposed
silence in favor of Defendant. Pennsylvania law, however, prescribes the precise
opposite – coverage is presumed, and it is exclusions and limitations that must be
clear and explicit. *See 4th St. Investors LLC v. Dowdell*, 2007 U.S. Dist. LEXIS
99670, at *20 (W.D. Pa. Dec. 3, 2007) ("limitations on the scope of coverage are to
be construed strictly against the insurance company.").

title lien fee of $26.00, a registration transfer fee of $9.00, county fees up to $5.00, inspection fees of $8.00, and emissions fees of $1.57. *Id.* at ¶ 20.

Plaintiff alleges these Mandatory Fees are imposed by the Commonwealth on every consumer vehicle transaction, and they must be paid in order to replace any vehicle titled or registered in the Commonwealth. *See id.* at ¶ 18. Plaintiff alleges Mandatory Fees are reasonably necessary to replace a vehicle, *id.* at ¶¶18-20. 31, which is a factual allegation, *see Mee*, 2006 PA Super 257, at *8 (whether a cost is reasonably likely to be incurred is a question of fact), and must be accepted as true at this stage of the litigation.

### iii. Defendant's "Disjunctive" Argument is a Red Herring

Defendant goes to great lengths to argue that because the Policy limits liability to the lesser of ACV and the cost to "repair or replace…with parts of like kind and quality," ACV cannot include replacement costs without rendering the "repair" provision superfluous. Motion at 8, 11, 15. This argument, however, is a red herring.

First, the argument makes little sense on its face given that courts universally recognize a difference between replacement cost less depreciation provisions (ACV) and "repair or replace the property with like kind and quality" provisions – which demonstrates the terms are not superfluous – and universally recognize that "repair or replace with like kind and quality" provisions are generally applicable to *partial* losses, not total losses. *See, e.g., Couch On Insurance* 3d, § 176:4 ("Repair and

replacement options are also generally inapplicable to circumstances of total loss")
(internal citations omitted); *id*. at § 175:40 ("In construing such a provision, it has
been held that the word 'replacement' means replacement of parts and not of the
entire car…") (cites omitted); *New Appelman On Insurance Law Library Edition*,
Vol. 6 § 62.08[1][c] ("Rather than pay the [ACV], an insurer has the option of
paying…to repair the damage or replace the damaged parts with property of like
kind and quality.  This option is typically elected when the vehicle is not a total
loss.").

　　　As Judge Ford explained, the cost to repair or replace the entire property will
necessarily exceed the cost to replace the entire property *less depreciation*, while the
cost to repair and partially replace will often be less than the property's ACV.
*London v. Insurance Placement Facility*, 703 A.2d 45, 58 n.9 (Pa. Super. Ct. 1997)
(concurring in part, dissenting in part). Thus, replacement cost less depreciation is
the lesser limit in the context of a total loss, while the cost to repair or replace with
like kind or quality is the lesser limit in the context of a partial loss – unquestionably,
then, the two terms are not superfluous.

　　　Second, to even arrive at this argument, Defendant was required to, and did,
mischaracterize virtually every case it cited. For example, Defendant cites *Kane* to
support its argument that insurers are permitted to tailor their policies to render ACV
less than full replacement cost. Motion at 10-11 (citing *Kane v. State Farm Fire &*

*Cas. Co.*, 841 A.2d 1038 (Pa. Super. 2003)). While this is true, *id*. at 1047, Defendant failed to inform the Court what *Kane* actually held, which is that while ACV normally means *full* replacement cost (without deduction even for depreciation), insurers can "clearly note that compensation will be paid out on an [ACV] basis which may include a deduction for depreciation" (as Defendant did here). *Id*. at 1049-50. This key distinction is confirmed by the *Kane* Court's rejection of *Gilderman* and *Canulli*, both of which defined ACV to always allow deduction for depreciation. *Id*. at 1048. In other words, the entire point in *Kane* was that ACV unquestionably includes replacement costs – the only question was whether insurers must pay full replacement costs or replacement costs less depreciation.[3]

Next, Defendant misstates the relevant facts of *Jones* and *Roth* by asserting those cases involved policies requiring "replacement cost," full stop. Motion at 14. That is simply not true – in both cases, the policies defined ACV as "replacement cost less depreciation" which is precisely how Pennsylvania law defines ACV. *Jones v. Gov't Emples. Ins. Co.*, 2019 U.S. Dist. LEXIS 120353, at *5 (M.D. Fla. Jul. 19,

_____

[3] Ironically, Defendant cites an Illinois case for support, and then quotes a passage that directly supports *Plaintiff's* position: "the policy defines [ACV] as "the amount it cost, at the time of loss, to buy" – not replace – "a comparable vehicle."...The definition is thus limited to the purchase price of the vehicle itself and does not include attendant "replacement costs" like sales tax, title fees, registration fees, or the like." *Coleman v. Garrison Prop. & Cas. Ins. Co.*, 2019 U.S. Dist. LEXIS 127940 (N.D. Ill., July 31, 2019). But here, the Policy does mean "replacement costs" less depreciation, which, under the *Coleman* court's logic, would therefore include title and registration fees.

2019) (GEICO's policy defined ACV as "the replacement cost of the [insured vehicle] less depreciation or betterment."); *Roth v. GEICO Gen. Ins. Co.*, 2018 U.S. Dist. LEXIS 226554, at *8 (S.D. Fla. Jun. 13, 2018) (same). Because the title and registration fees at issue in those cases were also necessary costs to replace a vehicle (and could not be excluded as depreciation), both courts unsurprisingly held they were covered by the policies. *Jones*, at *8-10 (title and registration fees are covered because they are reasonably necessary to replace a vehicle); *Roth*, at *9 (same); see also, e.g., *Ostendorf v. Grange Indem. Ins. Co.*, 2020 U.S. Dist. LEXIS 5163 (S.D. Oh. Jan. 13, 2020) (denying motion to dismiss because plausible to interpret ACV as including sales tax and mandatory fees); *Davis v. Geico Cas. Co.*, 2020 U.S. Dist. LEXIS 2071, at *15 (S.D. Oh. Jan. 7, 2020) (same).[4]

The same is true here. Under black-letter Pennsylvania law, ACV in Defendant's Policy means replacement cost less depreciation. The Transfer Fees Plaintiff seeks are not only reasonably but absolutely necessary to replace the total-loss vehicles. The cases Defendant cites stand for nothing more than the proposition

---

[4] In *Sos v. State Farm Mut. Auto. Ins. Co.*, 396 F. Supp. 3d 1074 (M.D. Fla. 2019), the policy at issue, like the Policy here, did not specifically define ACV. The court recognized that Florida law, like Pennsylvania's, measured ACV as replacement cost less depreciation. *Id*. at 1079-80 (noting Florida common law on ACV when undefined in policies and holding that "[c]considering this authority, the Court finds that [ACV] under the Policy means replacement cost minus depreciation."). The court had little difficulty in holding that "replacement cost minus depreciation" includes mandatory fees. *Id*. at 1081.

that ACV permits deduction for depreciation and does not require payment of full replacement cost, a proposition with which Plaintiff agrees but is irrelevant.

Defendant took into account age, mileage, use etc., thereby taking into account depreciation. *See Papurello*, 144 F. Supp. 3d at 763 (in insurance context, depreciation means "value diminution caused by physical deterioration of the property from age and physical wear and tear") (quotations removed); Exhibit B to Complaint (Market Valuation Report), at pg. 8 (taking into account the age of the vehicle and adjusting for mileage). Defendant also made a "condition adjustment" as permitted by the Policy. *See id*. at pg. 8 (explaining that difference between "Price" and "Adjusted Comparable Value" is to reduce the retail value ("Price") to "Average Private Condition"). The Policy said nothing, however, about excluding any other element of ACV, and certainly did not exclude necessary replacement costs such as Mandatory Fees, which are therefore required by the Policy.

### iv. Plaintiff's Interpretation Is Reasonable, At Minimum

Plaintiff believes ACV in the Policy unambiguously means replacement cost less depreciation. *See Compagnie Des Bauxites De Guinee v. Three Rivers Ins. Co.*, 2007 U.S. Dist. LEXIS 41539, at *9-10 (W.D. Pa. Jun. 7, 2007) (ACV is not ambiguous because "where terms commonly used in insurance policies have acquired settled meanings, a new meaning cannot be ascribed to any such term absent express language in the policy indicating such a change was intended.")

(citing *Kane*, 841 A.2d at 1045-1049 (long-settled understanding of the term [ACV] controls absent explicit language in the policy defining the term differently)). But even if the Court were to find that the ACV provision is ambiguous, the provision must still be construed in Plaintiff's favor. *See Redevelopment Authority of Cambria Cty. v. International Insurance Co.*, 454 Pa. Super. 374, 388, 685 A.2d 581, 588 (1996) (Where a court finds an insurance policy provision ambiguous, "the provision is to be construed in favor of the insured and against the insurer.").

Plaintiff's interpretation of ACV is in accord with uncontroverted and long-established Pennsylvania law. As such, it can hardly be unreasonable, and thus the Policy must be construed in Plaintiff's favor. *See General Refractories Co. v. Fed. Ins. Co.*, 2001 U.S. Dist. LEXIS 20406, at *10 (E.D. Pa. Dec. 6, 2001) (a term is ambiguous if susceptible to more than one reasonable interpretation and "reasonable interpretations of ambiguous provisions in insurance policies that are offered by the insured control.") (citations omitted).

**B. ACV is Not Contingent on Whether an Insured Actually Replaces the Vehicle.**

Defendant also argues no breach occurred because Plaintiff did not allege "she actually incurred any of the fees that she seeks in her Complaint[,]" Motion at 16, which contradicts black-letter Pennsylvania law that insureds are not required to actually replace property to trigger ACV payment. *See, e.g., Gilderman*, 437 Pa. Super. at 226 (ACV includes "any cost that an insured is reasonably likely to incur

in repairing or replacing a covered loss" and is not contingent on actual replacement or repair). The *Gilderman* court rejected the argument that it would be a windfall for insureds to receive payment for costs not incurred "when that is precisely what the insurer has agreed to pay under its policy in advance of actual repair or replacement." *Id*. at 227.

> In *Mee*, the court further confirmed this principle:
>
> "Safeco interprets *Gilderman* as imposing a requirement that an insurer look at the facts of each case in making its determination of whether the use of a contractor is reasonably likely. Because Mee did not hire a general contractor but did the work himself, Safeco argues, use of a general contractor was not reasonably likely, and, therefore, Mee was not entitled to O&P…
>
> [The insured is entitled to GCOP] if he can establish that use of a general contractor would be reasonably likely; the fact that Mee chose to… make the repairs himself does not necessarily preclude him from recovering O&P."

*Mee*, 2006 PA Super 257, at *7, 16.

On this point, Pennsylvania law is consistent with virtually every jurisdiction, which agree ACV is owed irrespective of whether the insured replaces or repairs the property. *See, e.g.*, *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1305-06 (11th Cir. 2008) (ACV includes GCOP and sales tax even where never actually incurred); *Parkway Associates, LLC v. Harleysville Mutual Ins. Co.*, 129 Fed. Appx. 955, 963 (6th Cir. 2005) (costs are encompassed by ACV when reasonably necessary to replace property irrespective of actual repair or replacement); *Ghoman v. New

*Hampshire Ins. Co.*, 159 F. Supp. 2d 928 (N.D. Tex. 2001) (same). ACV is a consistently applied, bargained-for amount upon which the insured and insurer can rely, and is utterly independent from the cost incurred (if any) in actual replacement.

The single Pennsylvania case Defendant cites in requesting that this Court commit error is *Kurach v. Truck Ins. Exch.*, 2018 Pa. Super. Unpub. LEXIS 3099 (Pa. Super. Aug. 24, 2018). But the Superior Court did not reverse the previously-cited black-letter law – it simply pointed out that the policy "clearly and obviously provides that GCOP will not be paid to an insured until the insured actually incurs that cost." *Id.* at *11. Defendant's Policy contains no such precondition for any component of ACV, and Defendant cannot impose an extracontractual precondition now. Defendant could have conditioned payment of ACV on replacing the vehicle and incurring the costs thereof, as various other insurers (including in *Kurach*) have chosen to do – but because Defendant declined to do so, it cannot retroactively impose an extracontractual condition precedent.

Defendant also cites *Sigler v. GEICO Cas. Co.*, 2019 U.S. Dist. LEXIS 82431 (C.D. Ill., May 15, 2019) for support. Motion at 17. Even assuming *Sigler* was correctly decided, it would mean only that Illinois law conflicts with Pennsylvania law, which is irrelevant. Notably, Illinois law includes a statute explicitly permitting insurers to defer payment of taxes and fees until incurred. *See* Ill. Admin. Code tit. 50, § 919.80(c)(3)(A)(i). Finally, *Sigler* conflicts with numerous cases – not only the

otherwise-uncontroverted jurisprudence on ACV (some of which is cited above), but also cases applying such principle in the context of total-loss motor vehicles. *See, e.g.*, *Roth*, 2018 U.S. Dist. LEXIS 226554, at *13-14 ("nothing in the Policy requires a[n] [ ] insured…to replace her total loss with any vehicle at all" to trigger full ACV payment); *Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1291 (M.D. Fla. 2015) ("the Court holds that the Policy [] require[s] payment of the full amount of sales tax that would be due on a vehicle comparable to the covered vehicle, regardless of whether that amount is actually incurred."); *Ostendorf*, 2020 U.S. Dist. LEXIS 5163, at *6 ("the calculation of the ACV of Plaintiff's vehicle is not dependent on whether she actually replaces it."); *Davis*, 2020 U.S. Dist. LEXIS 2071, at *15 (same).

Defendant promised to pay ACV, which includes deductions for depreciation and/or condition. Under clear Pennsylvania law, such promise requires payment of costs necessary to replace the property. Under equally clear Pennsylvania law, if Defendant wants to condition payment of any component of ACV upon proof the insured incurred such costs, it was required to explicitly say so in the Policy. The Policy, however, contains no such precondition, and, as in *Gilderman*, Plaintiff is entitled to ACV irrespective of replacement, because that is "precisely what the insurer has agreed to pay under its policy."

## C. At Minimum, Dismissal Is Precluded at This Stage of the Litigation

Plaintiff has adequately alleged the elements of breach of contract – existence of a contract, breach, and damages. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 431 (3d Cir. 2013). Namely, Plaintiff alleged she was insured under the Policy (contract existence), that Defendant failed to pay the full ACV promised by the Policy's terms (breach), and that she was damaged in the amount of underpayment, i.e. $104.57 for Mandatory Fees.

Such allegations are clearly plausible and set forth a valid cause of action. Calculating ACV includes factual issues precluding dismissal at the pleadings stage. *See, e.g.*, *Mee*, 2006 PA Super 257, at *8 (whether a cost is reasonably likely to be incurred is a question of fact). Although Plaintiff believes that because Sales Tax and Transfer Fees are mandatorily imposed on every vehicle, it is a factual question concerning which reasonable jurors cannot differ, for purposes of this Motion, the important point is that it is a question of fact that must be resolved in Plaintiff's favor.[5]

Moreover, in Pennsylvania, the interpretation and application of an insurance policy is typically conducted at summary judgment. *See Md. Cas. Co. v. Express*

---

[5] Even if Defendant were correct that ACV should be re-written to mean "market value," dismissal would still be precluded because the factors determining the market value of property is a factual question. *See, e.g.*, *Appeal of Park Drive Manor, Inc.*, 380 Pa. 134 (Pa. 1955) ("market value is a factual question to be determined by the trial court on the basis of expert testimony.").

*Prods.*, 2011 U.S. Dist. LEXIS 108048, at *33 (M.D. Pa. Sep. 22, 2011) ("Under Pennsylvania law, interpretation of an insurance policy is a question of law suitable for summary judgment.") (citations omitted) This is because evidence concerning an insured's reasonable expectations of the insured is potentially relevant to policy interpretation. *Frain v. Keystone Ins. Co.*, 640 A.2d 1352, 1354 (Pa. Super. Ct. 1994) ("The proper focus regarding issues of coverage under insurance contracts is the reasonable expectation of the insured.").

Thus, at minimum, resolution of Plaintiff's claim is inappropriate at this stage of the pleadings. Plaintiff is entitled to the opportunity to prove that insureds are reasonably likely to incur the cost of Transfer Fees in replacing total-loss vehicles in Pennsylvania, that her interpretation of the Policy is reasonable (indeed, it is the standard interpretation under clear Pennsylvania law), that her allegations are otherwise correct, and that Defendant breached by the contract by failing to include $104.57 for Transfer Fees as part of its' ACV payment to Plaintiff.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Complaint sets forth a viable claim for breach of contract, and that Defendant's Motion should be denied in its entirety.

Dated: March 26, 2020

Respectfully submitted by:

**KOHN, SWIFT & GRAF, P.C.**
*s/ Jonathan Shub*
Jonathan Shub, Esq.
Kevin Laukaitis, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA 19102
T: 215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

**NORMAND PLLC**
Edmund A. Normand*
Jacob L. Phillips*
3165 McCrory Place, Suite 175
Orlando, FL 32803
T: 407-603-6031
Ed@NormandPLLC.com

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.*
20900 NE 30th Avenue, #417
Aventura, FL 33180
T: 305-975-3320
scott@edelsberglaw.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis*
14 NE 1st Ave., Suite 1205
Miami, FL 33132
T: 305-479-2299
efilings@shamisgentile.com

**DAPEER LAW, P.A.**
Rachel Dapeer, Esq.*
300 S. Biscayne Blvd, #2704

Miami, FL 33131
T: 305-610-5223
rachel@dapeer.com

*Attorneys for Plaintiff and the Class*

*\*Admitted Pro Hac Vice or Pro Hac Vice
Application Forthcoming*

# **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.8(b)**

I, Jonathan Shub, Esq., hereby certify as follows:

Pursuant to Local Rule 7.8(b)(2) for the United States District Court for the Middle District of Pennsylvania, this brief complies with the word-count limitation of M.D.Pa. Local Rule 7.8(b)(2) because this brief contains **4,777** words (including body of the brief and footnotes, but excluding tables and certificates), in a proportionally spaced typeface (Times New Roman) in 14-point size. This calculation sum was provided by the Microsoft Word processing system word count function.

I certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

**KOHN, SWIFT & GRAF, P.C.**

*s/ Jonathan Shub*
Jonathan Shub, Esq.
Kevin Laukaitis, Esq.
1600 Market Street
Suite 2500
Philadelphia, PA 19102
T: 215-238-1700
jshub@kohnswift.com
klaukaitis@kohnswift.com

Dated: March 26, 2020

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of Plaintiff Sandra Siler's Response in Opposition to Defendant's Motion to Dismiss Plaintiff's Complaint, Certification of Compliance with M.D. Pa. Local Rule 7.8(b), and this Certificate of Service to be served via ECF upon:

> Marc E. Wolin
> David J. D'Aloia
> Krystal D. Riebesell
> **SAIBER LLC**
> 18 Columbia Turnpike, Suite 200
> Florham Park, New Jersey 07932

By:  /s/ *Jonathan Shub*
JONATHAN SHUB (PA 53965)

Dated: March 26, 2020