UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

SANDRA SILER,                                    :

    Plaintiff                                :

                                  CIVIL ACTION NO. 3:20-96

    v.                                       :

                                  (JUDGE MANNION)

CSAA GENERAL INSURANCE         :
COMPANY
                                  :

    Defendant

## MEMORANDUM

Presently before the court is the defendant CSAA General Insurance Company's motion to dismiss for failure to state a claim. (Doc. 7). Also before the court is a motion for leave to file an amended complaint filed by the plaintiff Sandra Siler. (Doc. 39). For the reasons set forth below, CSAA's motion to dismiss will be **GRANTED** and Siler's motion to amend will be **DENIED**.

    **I.**    **BACKGROUND**

On January 17, 2020, CSAA removed this action to this court. (Doc. 1). The action involved an accident that occurred on November 2, 2017, wherein Siler was driving her 2009 Suzuki SX4, which was insured under an automobile policy issued by CSAA.

Siler filed a claim with CSAA. The value of the vehicle was determined to be $5,654.57 and, after subtracting the $500.00 deductible, CSAA issued a final payment of $5,242.55 to Siler "based on the vehicle's market value just before the loss." (Doc. 1-1, at 81). CSAA's settlement letter indicated that the "[m]arket value represents the dollar amount you could expect to receive if you sold the vehicle in the marketplace prior to the incident." (Doc. 1-1, at 81). That amount did not include title fees, title lien fees, registration fees, county fees, or safety and emissions inspection fees, which are mandatory fees necessary to replace a vehicle in Pennsylvania. In the "Coverage for Damage to Your Auto" section of Siler's policy, it stated that CSAA would "pay for direct and accidental loss to 'your covered auto' . . . minus any applicable deductible shown in the Declarations." (Doc. 1-2, at 37). Under the "Limit of Liability" section, it stated that that CSAA's limit of liability is the lowest of: (1) "Actual cash value of the stolen or damaged property"; or (2) "Amount necessary to repair or replace the property with other property of like kind and quality." (Doc. 1-1, at 44). Actual Cash Value ("ACV") is not defined in the policy.

Siler brings this action on behalf of herself and other putative class members, alleging that CSAA systematically underpaid policyholders by refusing to pay for title, title lien, registration, county, and safety and

emissions inspection fees on all total loss vehicles when calculating ACV. She alleges these fees are "mandatory, unavoidable fees" that are "incontrovertibly part of the costs to replace a total loss vehicle." (Doc. 1-1, at 5). CSAA's refusal to pay them, Siler alleges, is a breach of CSAA's insurance policies, which requires them to pay ACV on total loss claims. She seeks both repayment of the costs and fees that should have been calculated in the ACVs and injunctive relief.

On February 19, 2020, CSAA filed a motion to dismiss. (Doc. 7). Siler filed a brief in opposition on March 26, 2020. (Doc. 25). CSAA has filed a reply brief. (Doc. 26).

On July 15, 2020, Siler filed a notice of supplemental authority, alerting the court to a recent similar case in the Middle District of Florida.[1] (Doc. 28). On July 20, 2020, CSAA filed its own notice of supplemental authority, attaching two cases which, it contended, presented identical circumstances as the underlying case.[2] (Doc. 29).

---

[1] Siler attached *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-890, 2020 WL 5534483 (M.D.Fla. Jul. 8, 2020), in which the court held the defendant had to pay the ACV or replace the vehicle where the policy stated that, if there was a total loss to the auto, the defendant must pay one of those two things.

[2] These cases were *Pappas v. Auto Club Ins. Ass'n*, No. 20-cv-983, 2020 WL 3303004 (N.D.Ill. June 18, 2020), and *Pieczonka v. Progressive*

On July 22, 2020, Siler filed a "response" to CSAA's supplemental authority, objecting to CSAA's representation that the two cases presented "identical circumstances." (Doc. 30). Siler argued that policy language in the two cases is materially different than the policy here since, unlike in those cases, her policy does not define ACV. Siler additionally attached yet another case.[3]

CSAA filed a letter the following day objecting to Siler's response arguing that there is no authority for such a filing in the Local Rules. (Doc. 31). Although Local Rule 7.36 permits a party to file a notice of supplemental authority, the rule expressly provides that it "must not include any argument," such as that included in Siler's response. M.D.Pa.L.R. 7.36.

---

*Select Ins. Co*, No. 19-cv-2965, 2020 WL 1930134 (N.D.Ohio Apr. 21, 2020). In both cases, the courts determined that ACV did not include registration, title, or transfer fees.

[3] Siler attached *Graves v. Mendakota Cas. Co.*, No. 2019 CH 5372 (Ill.Cir.Ct., Ch.Div. June 5, 2020), wherein the court held that a plaintiff policyholder survived a motion to dismiss by adequately alleging that the defendant breached his insurance policy "when it failed to include sales tax and Vehicle Title and Registration Fees" in its calculation of ACV. (Doc. 30-1, at 11).

CSAA subsequently filed three more notices of supplemental authority. (Doc. 32; Doc. 33; Doc. 36).[4]

On September 24, 2020, Siler filed a motion for leave to file an amended complaint, (Doc. 39), and a brief in support, (Doc. 40). CSAA filed a brief in opposition. (Doc. 47).

CSAA also filed three more notices of supplemental authority, (Doc. 41; Doc. 45; Doc. 49).[5] Siler filed two more "Responses" to the notices of

---

[4] The supplemental authority included *Sigler v. GEICO Cas. Co.*, 967 F.3d 658 (7th Cir. 2020), which held that neither the insurance policy nor Illinois law required the insurance company to pay sales tax and title and transfer fees if not actually incurred by the insured, (Doc. 32-1); *Williams-Diggins v. Permanent Gen. Assurance Corp. of Ohio*, 157 N.E.3d 220 (Ohio Ct.App. 2020), which held the insurance company had no duty to pay the insured sales tax and fees under the insurance policy, (Doc. 33-1); and *Sylvester v. Depositors Ins. Co.*, __ F.Supp.3d __, 2020 WL 4934361 (E.D.Pa. Aug. 21, 2020), which held that an insurance company was not obligated to pay the ACV because it was a limit of liability and not a promise to pay, (Doc. 36-1).

[5] These included *Barlow v. Gov't Emps. Ins. Co.*, No. 19-cv-3349, 2020 WL 5802274 (E.D.N.Y. Sept. 29, 2020), in which the court held that ACV does not include license and title fees under New York law, (Doc. 41-1); *Wilkerson v. Am. Family Ins. Co.*, No. 19-cv-2425, 2020 WL 5891971 (N.D.Ohio Oct. 5, 2020), in which the court held that ACV did not include sales tax, transfer fees, and registration fees under Ohio law, (Doc. 45-1); and *Pieczonka v. Progressive Select Ins. Co.*, __ Fed. App'x __, 2021 WL 192735 (6th Cir. 2021), in which the Sixth Circuit held that, under Florida law, ACV, which the policy stated was "determined by the market value, age, and condition of the vehicle at the time the loss occurs," did not include title, registration, or license plate fees because those fees are not paid to the seller. (Doc. 49-1).

supplemental authority, attempting to distinguish the cases. (Doc. 44; Doc. 50). CSAA responded with two letters reiterating that such filings were inappropriate under the Local Rules and this time requested that the responses be stricken. (Doc. 46; Doc. 51).

## II. STANDARD

### A. *Motion to Dismiss*

CSAA's motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. In deciding a defendant's motion, the court must read the complaint in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. *Estelle v. Gamble*, 429 U.S. 97 (1976). However, the court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004). The court also need not accept legal conclusions set forth as factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

In deciding a motion to dismiss, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents which the plaintiff has identified as the basis of his claim. *See Pension Benefit Guarantee Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Additionally, the court should generally grant leave to amend a complaint before dismissing it as merely deficient. *See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004).

**B.** *Motion for Leave to Amend*

Pursuant to Federal Rule of Civil Procedure 15, a party must seek to amend where, as here, 21 days have passed since the service of the opposing party's responsive pleading. Fed.R.Civ.P.15(a)(2). Although the court "should freely give leave when justice so requires," *id.*, amendment is not automatic. See *Dover Steel Co., Inc. v. Hartford Accident and Indent.*,

151 F.R.D. 570, 574 (E.D.Pa. 1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Forman v. Davis*, 371 U.S. 178, 182 (1962).

"Amendment of the complaint is futile if the amendment will not cure the deficiency in the original [pleading] or if the amended [pleading] cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988). Additionally, if the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v. Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990).

Where a plaintiff's amended complaint seeks merely to "bring mostly the same claims" as asserted previously, particularly if they were previously dismissed, leave to amend may be denied. *Juan v. Sanchez*, 339 Fed.App'x 182, 187 (3d Cir. 2009).

### III. DISCUSSION

*A. Motion to Dismiss*

In its motion to dismiss, CSAA argues that Siler fails to state a breach of contract claim for at least two reasons. First, CSAA argues that based upon the express language of the policy, ACV does not mean replacement value of the vehicle. CSAA emphasizes that the policy states its liability is limited to the lower of either ACV of the damaged property *or* the amount necessary to repair or replace the damaged property. If ACV had the same meaning as "replacement costs," then, CSAA argues, the language limiting liability to the lower of one or the either would make no sense.

CSAA argues that Pennsylvania courts have confirmed this fact. Although Siler contends that Pennsylvania law has consistently been interpreted to mean "repair or replacement costs less depreciation," (Doc. 1-1, at 7), CSAA argues that this point ignores the "intent of the parties as manifested by the language of the written instrument." (Doc. 8, at 12) (quoting *Madison Const. Co. v. Harleysville Mut. Ins. Co.*, 557 Pa. 595 (Pa. 1999)). CSAA cites *Kane v. State Farm Fire & Cas. Co*, 841 A.2d 1038, 1045 (Pa.Super. 2003), wherein Pennsylvania's Superior Court noted that, under Pennsylvania law, "actual cash value [is] not the same as market value, which would incorporate depreciation, but rather was akin to

replacement cost." *Kane* also noted, however, that "explicit policy language may avoid" that definition. *Id.* at 1047. That, CSAA maintains, was the scenario in *Kane* where insurance policies at issue contained "qualifying language indicating that 'actual cash value' will be the proffered compensation where the insured does not repair or replace the damage." *Id.* at 1049. As a result of that policy language, *Kane* held that ACV could not mean replacement value because "such interpretation would make the remaining policy language nonsensical." *Id.* Thus, under those polices, "actual cash value [could] not also mean replacement value." *Id.* CSAA argues that the language in the instant policy utilizes the same either/or terminology with its use of language limiting liability to the lower of the ACV or the replacement cost, such that ACV and replacement value cannot mean the same thing.

Since CSAA filed its motion to dismiss, *Sylvester* was decided in the Eastern District of Pennsylvania, which, as noted, was provided by CSAA in a notice of supplemental authority. There, the court was presented with a nearly identical issue as that in the instant case. In it, three plaintiffs brought a one-count breach of contract class action against their auto insurance companies for failure to pay the replacement costs of their total loss vehicles. The insurance policies each (1) provided that the insurer would

pay for "loss" to the covered vehicle; (2) limited liability to the "actual cash value" of the vehicle; and (3) referred to payment for loss as separate and distinct from replacing the vehicle. *Sylvester*, __ F.Supp.3d at __, 2020 WL 4934361, at *1.

Significantly, the policy of one of the plaintiffs, Sylvester, is nearly identical to Silers. Like Siler's, Sylvester's policy stated the insurance company would "pay for direct and accidental loss to 'your covered auto' or any 'non owned auto,' including their equipment, minus any applicable deductible shown in the Declarations." *Id.* at *1 n.1. With the exception of one word ("lesser" versus "lower"), the limit of liability section is identical to Silers: "Our limit of liability for loss will be the lesser of the: 1. Actual cash value of the stolen or damaged property; or 2. Amount necessary to repair or replace the property with other property of like kind and quality." *Id.* at *1 n.2.

Defendants in *Sylvester* moved to dismiss, arguing that the policies required only that they pay for the loss to the auto—not one of the limits of liability, the ACV. Further, they argued that even if the policies required payment of the limit of liability, ACV does not include repair and replacement costs. The court agreed and held,

> Plaintiffs fail to state a claim because the policies unambiguously provide that insurers must pay for the loss to the vehicle, not the replacement cost or the "actual cash value." And even if the collision results in a total loss, by the plain meaning of the terms of the contract, Defendants are not obligated to pay for the replacement of the vehicle. Thus, there is no plausible breach of contract claim.

*Id.* at *4.

The court observed that the contract did not create an obligation for the defendants to pay the replacement costs but, instead, to pay for damage or financial detriment to vehicles resulting from a collision. The court analyzed the contract under Pennsylvania law and considered the principle of *contra proferentem* but concluded the policy was not ambiguous. Thus, consistent with the Black's Law definition of "loss,"[6] the court concluded that the parties intended to contract to insure the cars for any damage or diminution in value that resulted from a collision and not for replacement of the cars. Reading "loss" as "replacement" would "render null the provisions in the agreements that make a distinction between payment for loss and replacement of the vehicle." *Id.*

---

[6] "The plain meaning of loss is the "diminution of value" or the "financial detriment caused by . . . an insured property's damage." *Id.* (quoting Loss, Black's Law Dictionary (10th ed.2014).

Crucially, here, *Sylvester* noted that the plaintiffs were misconstruing the limit of liability with an affirmative obligation to pay. The court agreed with Siler's point here that, under Pennsylvania law, "where a policy promises 'actual cash value,' the insured is entitled to replacement cost." *Id.* at *5 (quoting *Kane*, 841 A.2d at 1046). However, the plaintiffs' policies, like Siler's policy, did not promise ACV but only payment for loss to the auto. "It is the affirmative grant of coverage, *i.e.*, the promise to pay, that determined in the first instance the amount the insurer must pay the insured—the limit merely operates as a cap on this amount." *Id.*; see also *Coleman v. Garrison Prop. & Cas. Ins. Co.*, No. 19-cv-1745, 2019 WL 3554184, at *1 (N.D.Ill. July 31, 2019) (holding that the defendant insurer did not have to pay ACV because "the policy states, that the [ACV] of a comparable vehicle is the limit on Defendant's liability—not the amount that Defendants promised to pay her.").

Relatedly, *Sylvester* addressed and rejected the same argument Siler makes here, which is that, in the event of a total loss, the insurer is required to pay the ACV. The court noted that, "[i]n arguing that a total loss requires a payment of [ACV], Plaintiffs contend that when there is a total loss, the limit of liability becomes the obligation to pay"; however, that "argument [was] largely unsubstantiated." *Sylvester*, __ F.Supp.3d at __, 2020 WL

- 13 -

4934361, at *7. The court distinguished the single case cited by the plaintiffs and reiterated that, "[w]hile some insurance policies may provide that the insurer will pay replacement costs, the policies at issue here provide that the Defendants will pay the financial detriment or damages resulting from the collision"—not ACV. *Id.*

Here, the court will adopt the persuasive and thorough reasoning of *Sylvester* since the issue decided in that case does not differ in any material way from the instant one. Siler's policy does not provide that CSAA must or will pay for the replacement costs of the vehicle but, instead, requires only that CSAA pay for the value that was lost to the vehicle in the collision. When that loss is a total loss, CSAA must pay the full value of the vehicle but, once again, that does not include replacement costs. As a result, Siler's complaint, which asserts CSAA breached the policy by refusing to pay replacement costs and fees, has failed to state a breach of contract claim and CSAA is entitled to dismissal.

### B. Motion for Leave to Amend

Siler's motion for leave to amend her Complaint will be denied as doing so would be futile. Siler seeks to amend the Complaint in order to state explicitly what her current Complaint alleges implicitly—that the

amount of "loss" exceeded the vehicle's pre-loss ACV and, "[b]ecause CSAA chose not to pay to repair [the vehicle], but instead chose to total the vehicle and invoke the ACV limitation on liability (which is called a "total loss"), [CSAA] is bound by such decision and is obligated to pay the ACV of the totaled vehicle." (Doc. 40, at 2). Siler admits that "[t]he proposed Amended Complaint merely clarifies allegations to address potential deficiencies, if any, in the way the allegations were phrased—the substance of the allegations and the nature of the claim are unchanged." (Doc. 40, at 11). Siler indicates her motive in moving for leave to amend is to distinguish *Sylvester*, which, she contends, CSAA is "opportunistically attempting to take adventive of," apparently by submitting a notice of supplemental authority, despite her belief that its holding is inapplicable here. (Doc. 40, at 3).

Siler contends that central to the *Sylvester*'s holding was the fact that the amount of the loss was less than ACV. Because the loss here exceeded the ACV—a fact which she desires to make explicit in the Amended Complaint—Siler maintains that *Sylvester* in inapposite.

Even if the desire to distinguish one's case from supplemental authority provided by an opposing party were a valid basis for amending a complaint, Siler's amendment here would be futile. The fact Siler wishes to

- 15 -

clarify—and which CSAA does not dispute—fails to nullify the direct applicability of *Sylvester*.

*Sylvester*, in analyzing the case of *Bastian v. United Servs. Auto Ass'n*, 150 F.Supp.3d 1284, 1288-89 (M.D.Fla.2015), stated that it stood "for the proposition that the insurer must pay the limit [of liability] in the event of a total loss when the affirmative obligation to pay is greater than or equal to the limit of liability." *Sylvester*, __ F.Supp.3d at __, 2020 WL 4934361, at *7. However, as with Siler, "*Bastian* is inapposite in that here there is no express promise to pay for the replacement costs and there is no definition of loss that includes the cost of repairing or replacing such that the affirmative obligation to pay exceeds the limit of liability." *Id.*

Because of this, and because Siler does not seek to add any new claims, parties, or facts, amendment would be futile. Siler's amended complaint would do nothing to correct Siler's inability to succeed on the breach of contract claim she alleges.

### IV. CONCLUSION

In accordance with the above, Defendant's motion to dismiss, (Doc. 7), is **GRANTED** and the Complaint, (Doc. 1-1), is **DISMISSED with prejudice**. Siler's motion for leave to amend, (Doc. 39), is **DENIED**.

An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION
United States District Judge**

**DATED: February 11, 2021**
20-96-01